**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IAN MOORE AND 5,629 OTHER INDIVIDUALS,**<br><br>Petitioners,<br><br>– vs –<br><br>**MLB ADVANCE MEDIA, L.P.**<br><br>Respondent. | No. |

**PETITION TO COMPEL ARBITRATION**

Petitioners, by and through their undersigned attorneys, bring this Petition to Compel Arbitration against MLB Advance Media, L.P. ("MLBAM" or "Respondent") as follows:

## NATURE OF THE PETITION

1. Petitioners are 5,629 MLB.TV subscribers whose contractual rights to arbitrate individual claims against Respondent for its disclosure of Petitioners' personally identifiable information to numerous third parties have been stymied by Defendants unreasonable and unjustified refusal to abide by the terms of its arbitration contracts with Petitioners.

2. By subscribing to MLB.TV and creating an MLB.com account, every Petitioner agreed to MLBAM's Terms of Use Agreement dated February 4, 2020 ("Terms"), which includes a mandatory arbitration clause ("Arbitration Provision").  Annexed hereto as Exhibit B is a true and correct copy of MLBAM's Terms and Arbitration Provision.

3. The Arbitration Provision unequivocally states that Petitioners and Respondent have agreed to resolve their disputes through binding arbitration administered by the American Arbitration Association ("AAA") pursuant to the AAA's "governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes . . . " *Id*. at Section 11(1). In accordance with the Arbitration Provision, Petitioners notified MLBAM of their intent to pursue individual arbitrations against MLBAM with the AAA under MLBAM's Terms prior to filing any claims in arbitration. Annexed hereto as Exhibit C is a true and correct copy of the February 14, 2024 notice letter sent to MLBAM.

4. After Petitioners served their notices of dispute, the parties spent several months attempting to resolve Petitioners' claims informally.  During this period, the parties met and conferred several times and attempted to negotiate a tolling agreement, along with parameters for

1

mediating and informally resolving Petitioners' claims. Unfortunately, these efforts did not result in the settlement of any Petitioner's claim.

5. Accordingly, Petitioners followed the requirements of the parties' contracts and filed individual demands for arbitration against MLBAM with AAA per MLBAM's Terms and AAA's rules, paying the required AAA initiation fees. Annexed hereto as Exhibit D is a representative sample of the demand.

6. AAA confirmed that each Petitioner had met the AAA filing requirements and invoiced MLBAM for its part of the initiation fees, but MLBAM refused to pay or participate in AAA proceedings, in violation of its own agreement, AAA's Rules, and California Code of Civil Procedure Section 1281.97, which provides for sanctions for the refusal to pay an arbitral forum's fees within 30 days of receipt. As a direct result of MLBAM's noncompliance, AAA declined to administer Petitioners' arbitrations.

7. MLBAM's outright defiance of its contractual obligation and refusal to pay its share of the initiation fees deprived Petitioners of the ability to proceed with their arbitrations under the terms that MLBAM itself selected, drafted, and imposed on Petitioners, requiring Petitioners to seek redress in this Court.

8. The Federal Arbitration Act ("FAA") requires the Court to compel MLBAM to follow its contractual obligations and to proceed in arbitration in the manner provided in its agreement with Petitioners, including that MLBAM pay its portion of the filing fees under the applicable arbitration rules.

9. Petitioners have filed this Petition to require MLBAM to abide by the arbitration agreement it drafted.

**PARTIES**

10. Petitioners are 5,629 individual MLB.com account holders and MLB.TV subscribers who viewed prerecorded video content through MLBAM's digital properties and had their personally identifiable information disclosed to third parties without their consent, in violation of the Federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and related state laws. A company violates the VPPA when it: (1) is a "video tape service provider" as that term is defined in the statute; and (2) discloses a customer's personally identifiable information ("PII") along with the identity of videos that a customer requests or obtains from it outside of a statutory safe harbor. 18 U.S.C. § 2710. Petitioners' underlying arbitration claims stem from MLBAM's decision to embed the Facebook Tracking Pixel ("Facebook Pixel") in their digital products, through which MLBAM transmits Petitioners' personally identifiable information and video watching history to Facebook, in violation of the VPPA, CIPPA, and related state consumer protection laws.

11. MLB Advanced Media, L.P. is a limited partnership of the club owners of Major League Baseball organized under the laws of the State of Delaware and headquartered in New York City, New York. Founded in 2000, MLBAM operates, owns, and develops the MLB.TV and MLB.com websites, including prerecorded videos, documentaries, and other digital media content. MLBAM regularly conducts business throughout New York and the United States.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action under 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under the laws of the United States.

3

13. This Court has jurisdiction over MLBA because MLBAM's Terms and Arbitration Provision designate this District as the exclusive jurisdiction for proceedings involving Petitioners' claims.

14. This Court has personal jurisdiction over MLBAM because it is headquartered and regularly conducts business in this District and the State of New York, and a substantial part of the harm, events, and conduct giving rise to Petitioners' claims occurred in New York.

15. Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because MLBAM does business in and is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A. MLBAM Requires Consumers Agree to a Broad Arbitration Clause

16. MLBAM is the digital and media technology arm of Major League Baseball. It oversees digital content and advertising distribution as the exclusive operator of MLB.com and the MLB.TV service. MLBAM is engaged in the business of the rental, sale, and delivery of pre-recorded audio-visual materials. Its website, MLB.com is home to "MLB Original" videos and videos from "MLB Network." MLBAM also offers a paid subscription service, MLB.TV, which provides premium video content, including documentaries, classic programs and World Series Films. By subscribing to MLB.TV and creating an MLB.com account, Petitioners were automatically bound to the MLBAM Terms and Arbitration Provision. MLBAM's Terms and Arbitration Provision provides the following, in relevant part:

> Use of the Official Website of Major League Baseball, which encompasses MLB.com, the Official Websites of the thirty (30) Major League Baseball Clubs, the Official Websites of certain other Major League Baseball-related properties (collectively, this "Website"), downloadable mobile applications (e.g., MLB, Ballpark) available from third party application storefronts ("Application(s)"), games available from third party application storefronts (e.g. Beat the Streak, R.B.I. Baseball) ("Mobile Games"), games and other applications available from third party social media locations and gaming websites (e.g., MLB Ballpark Empire)

4

> ("Social Games") and all materials contained in this Website and/or otherwise accessible via other MLB-controlled products or services or MLB-operated interactive media locations will be referred to herein collectively as the "MLB Digital Properties" and individually as an "MLB Digital Property." By using an MLB Digital Property, you agree to be bound by this Agreement. If you do not agree to this Agreement, do not use the MLB Digital Properties.

*See* Ex. B at 1.

> Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties (including all commercial transactions conducted through the MLB Digital Properties) ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable.

*Id.* at Section 11(1).

17. Each Petitioner has signed a declaration verifying their agreement with MLBAM to bring their claims in arbitration per the MLBAM Terms dated February 4, 2020. Annexed hereto collectively as Exhibit E are true and correct copies of the 5,629 Petitioners' declarations and a spreadsheet summarizing the information contained there.

18. By its terms, the MLBAM Arbitration Provision governs "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties," including claims that MLBAM's technology surreptitiously disclosed and transmitted their personally identifiable information and video viewing history to third parties without consent in violation of the VPPA and equivalent common law and state privacy protection laws. *See* Ex. B at Section 11(1).

19. The MLBAM Arbitration Provision also broadly delegates nearly all issues arising out of the parties' relationship and the interpretation of their agreement to the arbitrator, unequivocally stating that "[a]ny and all disputes, claims or controversies arising out of or relating

5

to this Agreement, the breach thereof, or any use of the MLB Digital Properties . . . shall be settled by binding arbitration." *Id.* Further, the MLBAM Arbitration Provision incorporates by reference AAA's "governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable." *Id.* Those AAA rules also unequivocally provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA, Consumer Rules, R-14(a), a true and correct copy of which is annexed hereto as Exhibit F.

20. Under the AAA Consumer Rules, "[w]hen parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." *Id.* at R-1 .

21. The Consumer Rules incorporate the AAA's Mass Arbitration Supplementary Rules ("MA Rules") which apply where, as here, twenty-five (25) or more similar claims for arbitration are filed against the same party and counsel for the parties are consistent across all cases. *Id*. at MA-1. The purpose of the MA Rules is to "streamline the administration of large volume filings involving the same party, parties, and party representative(s), or related party" and "provide parties and their representatives with an efficient and economical path toward the resolution of multiple individual disputes." MA Rules at 3. Annexed hereto as Exhibit G is a true and correct copy of AAA's Mass Arbitration Supplementary Rules.

22. The MA Rules have also created a streamlined process for handling threshold disputes based on a company's refusal to pay their portion of the mandatory fees because of their unilateral determination that the claims are faulty or frivolous. Indeed, upon confirmation that all

filing requirements have been met, MA Rule 6 authorizes the appointment of a process arbitrator to adjudicate issues relating to a host of issues, including disputes about the filing requirements, administrative fees, and "[a]ny other non-merits issues affecting case administration arising out of the nature of the mass arbitration that the Process Arbitrator determines is appropriate for determination." *Id*.

23. The MA Rules further authorize the AAA to require the parties to pay their respective portions of AAA's mass arbitration administrative fees, including payment of the initiation fee ("Initiation Fee") that includes an administrative review of the filing and appointment of a process arbitrator. The Initiation Fee is $3,125 for the consumers, in the aggregate, and $8,125 for the business, regardless of the number of claimants who have filed. AAA's Consumer Mass Arbitration and Mediation Fee Schedule at (i), a true and correct copy of which is annexed hereto as Exhibit H.

**B. Petitioners Provided MLBAM With Sufficient Notice Of Their Claims And Filed Individual Arbitration Demands That AAA Determined Met The Initial Filing Requirements.**

24. On February 14, 2024, Petitioners notified MLBAM of their intent to pursue individual arbitrations under MLBAM's Terms.

25. MLBAM's counsel responded to Petitioners' notice letter on February 22, 2024 acknowledging Petitioners' intent to arbitrate under MLBAM's Terms and requesting a plethora of additional information about each Petitioner's claim, including the specific names and URLs for the prerecorded videos, which is not required by MLBAM's Arbitration Provision, the AAA rules, or the applicable case law. Worse, the majority of MLBAM's requests sought information already in MLBAM's possession and "evidence" about each claim that far exceeds not only the requirement of the parties' contracts, but also their eventual discovery obligations under AAA

rules. Annexed hereto as Exhibit I is a true and correct copy of MLBAM's February 22, 2024 correspondence.

26. On March 11, 2024, Petitioners responded to MLBAM's February 22 letter rejecting MLBAM's burdensome requests, maintaining that MLBAM's Terms govern the dispute, and offering to engage in good faith discussions about Petitioners' claims and limited informal discovery in exchange for an agreement to toll Petitioners claims and mediate. Annexed hereto as Exhibit J is a true and correct copy of Petitioners' March 11, 2024 correspondence.

27. Over the next several months, Petitioners and MLBAM engaged in several informal discussions to try to reach an agreement on a tolling agreement and parameters for mediation. Despite numerous attempts, these efforts ultimately failed. As a result, Petitioners notified MLBAM that it would be filing arbitrations with AAA per MLBAM's Terms.

28. On September 5, 2024, Petitioners commenced individual arbitrations with AAA by filing 5,629 individual demands for arbitration and the necessary additional documents required by AAA rules. AAA confirmed receipt of Petitioners' filings on September 23, 2024, and issued a $3,125.00 invoice for Petitioners' portion of the AAA Initiation Fee, which Petitioners paid on September 26, 2024. Annexed hereto as Exhibit K is a true and correct copy of Petitioners' September 5, 2024 filing with AAA. Annexed hereto as Exhibit L is a true and correct copy of AAA's September 23, 2024 correspondence.

29. On October 2, 2024, the AAA confirmed that the Petitioners had met AAA's initial case filing requirements and issued an invoice to MLBAM for $8,125.00 for its portion of the Initiation Fee, due upon receipt. The AAA further warned MLBAM that the failure to pay the required fees within 30 days (i.e., by November 1, 2024) would result in a violation of California Code of Civil Procedure Section 1281.97, which governs the enforcement of arbitration

8

agreements and provides for sanctions for refusal to pay the arbitral forum's fees. Annexed hereto as Exhibit M is a true and correct copy of AAA's October 2, 2024 correspondence. Annexed hereto as Exhibit N is a true and correct copy of AAA's invoice to MLBAM.

30.     On October 4, 2024, MLBAM's counsel sent a letter to Petitioners' counsel incorrectly asserting that Petitioners claims were not arbitrable and seeking clarification about Petitioners' filing with AAA. Annexed hereto as Exhibit O is a true and correct copy of MLBAM's October 4, 2024 correspondence.

31.     Petitioners' counsel responded to MLBAM's letter on October 10, 2024, explaining why Petitioners' claims with MLBAM are not only arbitrable but also governed by the MLBAM Terms dated February 4, 2020 and detailing the status of the proceedings before the AAA, including MLBAM's noncompliance with the AAA's MA Rules and failure to remit its portion of the Initiation Fee. Annexed hereto as Exhibit P is a true and correct copy of Petitioners' October 10, 2024 correspondence.

32.     On November 13, 2024, AAA declined to administer the 763 arbitrations filed by California residents (the "California Petitioners") due to MLBAM's refusal to pay AAA's mandatory initiation fees. The AAA further requested that MLBAM advise AAA of its intention to pay the initiation fee for the remaining Petitioners by November 20, 2024. Annexed hereto as Exhibit Q is a true and correct copy of AAA's November 13, 2024 correspondence.

33.     That same day, November 13, 2024, Petitioners' counsel requested the AAA stay the claims on behalf of the California Petitioners as opposed to closing the matters to allow the California Petitioners to seek appropriate remedies under the FAA and Cal. Code Civ. P. 1281.97 and advised the AAA of their intention to seek judicial relief if MLBAM refused to pay the

9

initiation fees for the remaining Petitioners. Annexed hereto as Exhibit R is a true and correct copy of Petitioners' November 13, 2024 correspondence.

34.     MLBAM responded to AAA on November 19, 2024 demanding that AAA rescind all outstanding invoices issued against MLBAM and close all Petitioners' arbitrations because (i) MLBAM claimed it had never received the AAA's October 2, 2024 letter requiring payment for MLBAM's portion of the initiation fees (despite MLBAM admitting that it saw the AAA's October 2, 2024 invoice); and (ii) MLBAM incorrectly asserted that Petitioners' claims are not arbitrable. Annexed hereto as Exhibit S is a true and correct copy of MLBAM's November 19, 2024 correspondence.

35.     Upon receipt of the above letters, on December 5, 2024, the AAA declined to administer arbitration for the remaining Petitioners due to MLBAM's failure to pay the mandatory initiation fee. AAA further instructed the parties that, "[p]ursuant to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution," and that "if either party returns with a Court Order serving to reopen these matters, [AAA] will not require Claimants to submit a new Initiation Fee, [but] would still require Respondent's portion to be paid immediately upon reopening the caseload." Annexed hereto as Exhibit T is a true and correct copy of AAA's December 5, 2024 correspondence.

36.     MLBAM has previously been eager to arbitrate nearly identical claims with its users. In 2022, a class action complaint was filed in the Northern District of Illinois against MLBAM alleging violations of the VPPA due to the presence of the Facebook Pixel in MLB.com's video assets and the subsequent disclosure of customer information without consent – i.e., virtually the same allegations at issue here. *See* Class Action Complaint, *Hayes v. Major League Baseball*

10

*Advanced Media, LP*, No. 1:22-cv-05822 (N.D. Ill. Oct. 21, 2022) ("*Hayes*"). Annexed hereto as Exhibit U is a true and correct copy of the *Hayes* Class Action Complaint. MLBAM moved to dismiss the *Hayes* complaint in favor of arbitration, urging the Court that, as an MLB.com account holder, Plaintiff had agreed to a binding arbitration provision, the scope of which included VPPA claims. *See* Defendants Motion to Dismiss in Favor of Arbitration, *Hayes*, (Jan. 18, 2023). Annexed hereto as Exhibit V is a true and correct copy of Defendant's Motion to Dismiss in the *Hayes* matter and annexed hereto as Exhibit W is a true and correct copy of the Notice of Voluntary Dismissal in the *Hayes* matter. Similarly, in *Carroll v. MLB Advanced Media, LP*, , in moving to dismiss, MLBAM again asserted that MLBAM's terms include a "binding clause requiring [users] to arbitrate any disputes arising from . . . use of MLBAM digital products." Defendants Motion To Dismiss, at n.2, *Carroll v. MLB Advanced Media LP*, No. 2:23-cv-01216-RGK-AFM, 2023 WL 3320322 (C.D. Cal. Feb. 24, 2023). Accordingly, MLBAM's refusal to arbitrate with Petitioners contradicts MLBAM's previous positions before, and representations to, multiple courts.

37. MLBAM violated AAA's requirements and breached its contractual obligation to arbitrate Petitioners' claims. Under the FAA, this Court must grant Petitioners' motion, enforce the Arbitration Provision as written, and order MLBAM to comply with AAA's administrative determinations so Petitioners' arbitrations can begin immediately.

38. Further, under California law, California Petitioners are entitled to sanctions if "fees or costs to initiate an arbitration proceeding are not paid [by MLBAM] within 30 days after the due date." Cal. Code Civ. Proc. §1281.97(a)(1) and (d). Annexed hereto as Exhibit X is a true and correct list of the California Petitioners.

39. On October 2, 2024, AAA issued to MLBAM an invoice in the amount of $8,125 for its portion of the Initiation Fee, wherein a Due Date was listed as October 2, 2024. *See* Ex. N.

40. Also on October 2, 2024, AAA sent correspondence to both parties therein requesting Respondent's portion of the initiation fee. In that correspondence, AAA made clear: "[p]ayment is due upon receipt and must be paid by 30 days from the Due Date provided on the attached invoice [(i.e., November 1, 2024)] . . . [and] [p]ursuant to CCCP Section 1281.97, the AAA cannot extend this payment deadline." *See* Ex. M.

41. MLBAM has still, thus far, failed to remit its portion of the Initiation Fee and is thereby plainly in violation of Cal. Code Civ. Proc. §1281.97. Accordingly, Petitioners "may . . . compel arbitration in which the drafting party [(i.e., MLBAM)] shall pay reasonable attorney's fees and costs related to the arbitration." *Id.* § 1281.97(b)(2).

42. This Petition presents a straightforward application of the statute. "[T]he language of section 1281.97 is unambiguous…[T]he triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specified no other required findings, such as whether the nonpayment was deliberate or inadvertent." *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 776 (Cal. Ct. App. 2022). That means that Petitioners are entitled to arbitrations "in which the drafting party [(i.e., MLBAM)] shall pay reasonable attorney's fees and costs related to the arbitration." Cal. Code Civ. Proc. § 1281.97(b)(2). Furthermore, "[i]f the…consumer proceeds with an action in a court of appropriate jurisdiction, the court shall impose sanctions on the drafting party [(i.e., MLBAM)]." *Id.* §1281.97(d).

## COUNT I

### 9 U.S.C. § 4 - Failure to Arbitrate Under Agreement

43. Petitioners repeat and re-allege the allegations of Paragraph 1 through 42 as if fully set forth herein.

44. Each Petitioner and MLBAM entered into a valid agreement requiring them to arbitrate all claims arising out of or relating to any MLBAM digital product or service before AAA.

45. MLBAM breached that agreement by refusing to pay the fees it owes under AAA's administrative rules – fees the AAA requires before it empanels arbitrators and begins Petitioners' arbitrations.

46. Until MLBAM complies with AAA's administrative determinations, Petitioners' arbitrations cannot proceed.

47. The Federal Arbitration Act, 9 U.S.C. § 4, provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration **proceed in the manner provided for in such agreement**." (emphasis added).

48. Accordingly, Petitioners are entitled to an order compelling MLBAM to proceed in arbitration in the manner provided in its agreement with Petitioners, including that MLBAM pay it portion of the initiation fees.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that this Court enter an order granting the following relief:

1. Requiring that MLBAM arbitrate each Petitioner's claims under the Arbitration Provision, which includes paying the arbitration fees and costs the AAA determines are necessary to empanel arbitrators and proceed with arbitrations;

2. Granting Petitioners their reasonable attorneys' fees, costs, and expenses, including their fees and costs expended in seeking arbitration pursuant to Cal. Code Civ. P. §1281.97 for the California Petitioners;

3. Retaining jurisdiction to address any additional fee or compliance disputes that may arise and to confirm any eventual arbitral awards; and

4. Granting such other relief as the Court deems just and proper.

Dated: April 15, 2025

Respectfully submitted,

By: _____

Jonathan D. Waisnor
Jonathan Gardner
James Fee
Shannon K. Tully
Alexander F. Schlow
Stephen Kenny
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Fl.
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jwaisnor@labaton.com
jgardner@labaton.com
jfee@labaton.com
stully@labaton.com
aschlow@labaton.com
skenny@labaton.com

*Attorneys for Petitioners*
