**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IAN MOORE, AND 5,628 OTHER INDIVIDUALS**[1],<br><br>Petitioners,<br><br>v.<br><br>**MLB ADVANCE MEDIA, L.P.**<br><br>Respondent. | No. __________ |

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION TO COMPEL ARBITRATION

[1] Annexed to the Petition as Exhibit A is a true and correct copy of the list of the 5,629 individual Petitioners.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. MLBAM Requires that Users Agree to a Broad Arbitration Clause ..... 1

B. Petitioners Provided MLBAM with Sufficient Notice of their Claims and Filed Individual Arbitration Demands that AAA Determined Met the Initial Filing Requirements. ..... 5

C. MLBAM Refused to Pay its Initiation Fees Required by the AAA to Empanel a Process Arbitrator. ..... 6

D. MLBAM Moved to Compel Other Related Class Actions to Arbitration ..... 6

III. ARGUMENT ..... 7

A. Applicable Standard ..... 7

B. The Parties Entered into a Valid Arbitration Agreement ..... 9

C. The Parties' Arbitration Agreement Unquestionably Encompasses the Present Disputes. ..... 11

1. The contractual language unmistakably covers Petitioners' underlying claims. ..... 11

2. The operative contract delegates any disputes regarding arbitrability, including questions regarding the scope of the MLBAM Arbitration Provision, to the arbitrator. ..... 13

3. MLBAM is estopped from asserting that claims related to its Digital Products do not belong in arbitration. ..... 16

D. MLBAM has Breached the Mutual Arbitration Provision by Refusing to Pay its Filing Fees and Arbitrate in Accordance with its Terms. ..... 17

IV. The Court Should Stay This Proceeding Pending Resolution of the Arbitration Process. ..... 19

A. The California Petitioners are Entitled to their Reasonable Attorneys' Fees in Connection with this Action. ..... 21

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. DoorDash, Inc.*,
438 F. Supp. 3d 1062 (N.D. Cal. 2020) ....................10

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................8

*Ashmore v. CGI Grp., Inc.*,
923 F.3d 260 (2d Cir. 2019)....................17

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................8

*AT&T Techs., Inc. v. Commc'ns Workers*,
475 U.S. 643 (1986)....................12

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
17-CV-04570 (LAK) (KHP), 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ....................12

*Berryman v. Reading Int'l, Inc.*,
No. 24 Civ.750, 2025 WL 315403 (S.D.N.Y. Jan. 28, 2025)....................3

*Brooks v. WarnerMedia Direct, LLC*,
No. 23 CIV. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ....................18, 19

*Carroll v. MLB Advanced Media LP*,
C. D. Cal. Case No. 2:23-cv-01216-RGK-AFM ECF No. 21, 2023 WL 3320322 (Feb. 24, 2023)....................7

*Carroll v. MLB Advanced Media LP*,
No. 2:23-cv-01216-RGK-AFM, 2023 WL 3320325 (C.D. Cal. Feb. 24, 2023) ....................7, 16

*Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*,
No. 14-cv-8457, 2016 WL 4036754 (N.D. Ill. July 28, 2016) ....................15

*Clark v. AII Acquisition, LLC*,
886 F.3d 261 (2d Cir. 2018)....................17

*Clark v. Snap, Inc.*,
Case No. 3:21-cv-9-DWD, 2021 WL 2376359 (S.D. Ill. June 10, 2021)....................15

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....................8, 9

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024)....................3

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....................14

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021)....................8

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) ....................14

*De Leon v. Juanita's Foods*,
85 Cal. App. 5th 740 (Cal. Ct. App. 2022) ....................22

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................8, 9

*Doctor's Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019)....................8

*Doe v. Laws. for Emp. & Consumer Rts.*,
No. 2D CIV B330052, 2024 WL 1203776 (Cal. Ct. App. Mar. 21, 2024),
*petition for review filed*, No. S284810 (Cal. Apr. 30, 2024) ....................21

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) ....................14

*Epic Sys. Corp. v. Lewis*,
584 U. S. 497 (2018)....................9

*Ford Motor Credit Co. v Colonial Funding Corp.*,
215 A.D.2d 435 (N.Y. App. Div. 1995) ....................17

*Frazier v. X Corp*,
739 F. Supp. 3d 219 (S.D.N.Y. 2024)....................18

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)....................11

*Hatemi v. M&T Bank*,
633 F. App'x 47 (2d Cir. 2016) ....................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................9, 14

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004)....................12

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)....................20

*Lifescan, Inc. v. Premier Diabetic Servs., Inc*,
363 F.3d 1010 (9th Cir. 2004)....................15

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
No. 17 CIV. 589 (LGS), 2018 WL 1083968 (S.D.N.Y. Feb. 27, 2018), *aff'd*,
748 F. App'x 363 (2d Cir. 2018)....................8

*Metro. Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019)....................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................12

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................17

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................20

*Nyerges v. Pac. Sunwear of Cal., LLC*,
No. 21-CV-01123-CJC-DFM-X, 2022 WL 20717551 (C.D. Cal. July 6, 2022)....................21

*O'Connor v. Ford Motor Co.*,
Case No. 19-cv-5045, 2023 WL 130522 (N.D. Ill. Jan. 9, 2023)....................15

*Perry v. MLB Advanced Media, L.P.*,
Case No. CV 18-1548 PSG, 2018 WL 5861307 (C.D. Cal. May 30, 2018)....................12, 16

*Postmates Inc. v. 10,356 Individuals*,
No. 20-cv-02783, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021)....................22

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)....................14

*Safra Sec., LLC v. Gonzales*,
764 F. App'x 125 (2d Cir. 2019)....................12

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................20

*Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*,
204 A.D.3d 506 (N.Y. App. Div. 2022)....................15

*Yorke v. TSE Grp. LLC*,
No. 18-CV-5268 (JMF), 2019 WL 3219384 (S.D.N.Y. July 17, 2019)....................10

**Statutes**

9 U.S.C. §§1- 16 ....................7

9 U. S. C. § 2....................7

9 U.S.C. § 3....................19

9 U.S.C. § 4....................8, 9

9 U.S.C. § 5....................20

9 U.S.C. § 7....................20

9 U.S.C. § 9....................20

18 U.S.C. § 2710....................2

CAA ....................21

California Arbitration Act § 1281.97, part....................21

California Information Privacy Protection Act....................2

CIPPA ....................2

Federal Arbitration Act....................7

Video Privacy Protection Act ....................1

VPPA .................... *passim*

**Other Authorities**

2019–2020 Reg. Sess. (Cal. 2019)....................21

Dismiss, *Caroll* ....................16

MLBAM "Digital Properties"....................3, 11

MLBAM's "Digital Properties,"....................3

Rule 1(a)....................13

Rule 14(a)....................13

Rule 53 ....................13

Rules 12(8)(a) and (12)(b)(6)....................3

URL https://www.facebook.com/profile.php?id= ....................2

**Suspects**

Broad Arbitration Clause ....................1

Section 11....................3

*Id.* at Section 1 ....................3

*Id.* at Section 1 ....................3

*Id.* at Section 11.1 ....................4

*id.* at Section 11(4)....................4

868 F.3d 66, 75 (2d Cir. 2017)....................9

735 F. Supp. 3d 407 n. 5 (S.D.N.Y. 2024)....................10

841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012)....................10

AAA's Consumer Clause....................18

Section 1281.97....................21

## I. INTRODUCTION

MLB Advance Media, L.P. ("MLBAM" or "Respondent") has breached its commitment to 5,629 of its subscribers ("Petitioners") by refusing to pay its share of required arbitration fees in the arbitral forum that MLBAM itself chose. For years, MLBAM has included a forced mandatory individual arbitration provision in its Terms of Use, wielding arbitration as a shield to successfully evade class actions. The thinking, of course, was that it was cost prohibitive for customers to retain counsel or bring arbitral claims on an individual basis. Now, when Petitioners seek to enforce the arbitration provision which MLBAM forced upon them, MLBAM refuses to honor its contract.

The FAA requires that arbitration agreements be enforced according to their terms, and that contractual delegations of certain issues to merits arbitrators be respected. MLBAM has refused to play by the rules it forced on Petitioners, and the FAA now permits this Court to mandate that MLBAM uphold its end of the bargain. This Court must order MLBAM to comply with its own Terms of Use, including obeying AAA's directive and California law that MLBAM pay arbitration fees so that arbitrations may commence.

## II. BACKGROUND

### A. MLBAM Requires that Users Agree to a Broad Arbitration Clause

MLBAM operates the MLB.TV and MLB.com websites, which provide premium prerecorded video content, including documentaries, classic programs, and World Series Films to paid subscribers of MLB.TV and MLB.com accountholders. As such, MLBAM is engaged in the business of rental, sale, and delivery of pre-recorded audio-visual materials.

Petitioners are MLB.TV customers and MLB.com accountholders who seek to bring arbitrations against MLBAM for MLBAM's violations of the Video Privacy Protection Act ("VPPA"), along with common law tort claims sounding in Intrusion Upon Seclusion, Invasion of

Privacy, and Unjust Enrichment, as well as for violation of the California Information Privacy Protection Act ("CIPPA") and various consumer protection laws across Petitioners' respective home-states.

A company violates the VPPA when it: (1) is a "video tape service provider" as that term is defined in the statute; and (2) discloses a customer's personally identifiable information ("PII") along with the identity of videos that a customer requests or obtains from it outside of a statutory safe harbor. 18 U.S.C. § 2710. Petitioners' underlying arbitration claims stem from MLBAM's decision to embed the Facebook Tracking Pixel ("Facebook Pixel") in its digital products, through which MLBAM transmits Petitioners' personally identifiable information and video watching history to Facebook, in violation of the VPPA, CIPPA, and related state consumer protection laws. The Facebook Pixel is a digital tool – invisible to the ordinary consumer – which tracks user-actions on Facebook advertisers' websites and reports them back to Facebook. This allows Facebook and associated advertisers to build detailed profiles about a person's web browsing history across the internet, a practice from which MLBAM benefits financially. By incorporating the Facebook Pixel into their digital products, MLBAM was able to unilaterally transfer record of Petitioners' activities, including a unique identifier that allows anyone to view Petitioners' Facebook profile as well as the videos they watch or request on MLB.com, to Facebook. Specifically, the data MLBAM transferred included Petitioners' unencrypted Facebook IDs and the title of the videos they viewed. A Facebook ID is a unique and persistent identifier assigned to every Facebook user; with this ID, any ordinary person could identify a Facebook user simply by adding that user's Facebook ID to the end of the URL https://www.facebook.com/profile.php?id=.

Integration of the Facebook Pixel into websites including videos, like those operated by MLBAM, has repeatedly been found to violate the VPPA. *See Berryman v. Reading Int'l, Inc.*, No. 24 Civ.750, 2025 WL 315403 (S.D.N.Y. Jan. 28, 2025) (denying a motion to dismiss a claim regarding the Facebook Pixel finding that both parties were properly construed as a "video tape service provider" and "consumer" within the meaning of the VPPA); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274 (S.D.N.Y. 2024) (denying motions to dismiss VPPA claims brought under Rules 12(8)(a) and (12)(b)(6)).

MLBAM required that consumers, including each of the Petitioners, agree to its non-negotiable arbitration provision, included in its Terms of Use.[2] S*ee* Petition to Compel Arbitration ("Petition") ¶ 16, Ex. B at Section 11 ("Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties…except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association"). Entering into MLBAM's terms, which contained the arbitration provision, was not a choice. The beginning of MLBAM's Terms of Use reads, in relevant part: "By using an MLB Digital Property, you agree to be bound by this Agreement. If you do not agree to this Agreement, do not use the MLB Digital Properties."). *Id.* at Section 1.

MLBAM's Terms apply broadly to users of MLBAM's "Digital Properties," including MLBAM's websites (i.e., MLB.com and MLB.TV), software, web applications, or any related MLBAM service. *Id.* at Section 1 (defining MLBAM "Digital Properties" to include all MLBAM

[2] Here and throughout, "Terms of Use" shall refer to that which was last updated on February 4, 2020.

"Websites . . . [and] all products and services provided and/or distributed (whether via this Website or elsewhere) by MLBAM"). The Terms also contain a broad arbitration clause that mandates arbitration in the AAA pursuant to the AAA consumer rules:

> Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties… shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable. In agreeing to arbitrate all Claims, you and MLB waive all rights to a trial by jury in any action or proceeding involving any Claim. The arbitration shall be held in New York County, New York, and judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. This arbitration undertaking is made pursuant to and in connection with a transaction involving interstate commerce, and shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act at 9 U.S.C. Section 1, et seq. The parties agree that an award and any judgment confirming it only applies to the arbitration in which it was awarded and cannot be used in any other case except to enforce the award itself. This arbitration provision shall survive termination of this Agreement.

*Id.* at Section 11.1

The provision further specifies that the arbitrations must be individual; the parties cannot bring class, collective, or other representative proceedings. *See id.* at Section 11(4) ("Any and all claims shall be arbitrated on an individual basis only and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party. You and MLB agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis."). Each Petitioner indeed agreed to these terms, including the arbitration provision, by subscribing to MLB.TV or creating an MLB.com account, as shown in Petitioners' sworn declarations attesting to their status as a customer and assent to the Terms of Use, attached to the Petition. *See* Petition ¶ 17, Ex. E. "I, [Petitioner], am an MLB.com subscriber.

I signed up for an MLB.com account by creating an account on MLB.com, purchasing an MLB.TV subscription or an MLB At Bat subscription, or logging into MLB.com using my TV provider or Amazon Prime information."

### B. Petitioners Provided MLBAM with Sufficient Notice of their Claims and Filed Individual Arbitration Demands that AAA Determined Met the Initial Filing Requirements.

On February 14, 2024, counsel for Petitioners provided formal notice to MLBAM of a subset of 5,771 of Petitioners' individual claims under the VPPA and corresponding state video privacy protection laws pursuant to the arbitration provision of MLBAM's Terms. Petitioners' letter specifically described MLBAM's conduct and Petitioners' injuries and noted that Petitioners intended to file their claims with the AAA pursuant to MLBAM's Terms of Use last updated February 4, 2020. Over the next several months, Petitioners and MLBAM engaged in informal discussions and attempted to negotiate parameters of a formal mediation. Despite numerous attempts, these efforts ultimately failed.

On September 5, 2024, Petitioners filed their 5,629 individual consumer arbitrations against MLBAM with the AAA in accordance with the Terms of Use. *See* Petition ¶ 28, Ex. K (Petitioners' arb. filing). AAA applied its mass arbitration supplementary rules to the claims, which allow the parties to resolve certain preliminary administrative issues before paying per case filing fees at the cost of a single flat initiation fee. On September 23, 2024, AAA sent both Petitioners and MLBAM an invoice for their respective initiation fees - $3,125 for Claimants (i.e., Petitioners) and $8,125 for Respondents – and set a payment deadline of September 30, 2024. *See* Petition ¶ 28, Ex. L (AAA's 9/2/24 letter). Petitioners promptly paid their fees and on October 2, 2024, AAA sent confirmation of a completed invoice to Petitioners, stating that Petitioners had met all their filing requirements. *See* Petition ¶ 29, Ex. M (AAA's 10/2/24 letter) ("This confirms Claimants' initial filing requirements have been met for this Mass Arbitration caseload.").

### C. MLBAM Refused to Pay its Initiation Fees Required by the AAA to Empanel a Process Arbitrator.

As part of the same October 2, 2024 correspondence, the AAA again requested that MLBAM remit payment in the amount of $8,125.00 for its portion of the initiation fees. *See* Petition ¶ 29, Ex. M and Ex. N (AAA's 10/2/24 invoice). The AAA informed the parties that MLBAM had 30 days to remit payment and that the deadline could not be extended. Over the next several weeks, MLBAM's counsel continued to dispute the arbitrability of the claims, all the while ignoring AAA's request to pay their owed fees. On November 13, 2024, the AAA informed the parties that as a result of MLBAM's continued refusal to pay an $8,125 initiation fee, it could not proceed with administering the 763 California Petitioners' claims but would reopen them in the event a court ordered MLBAM to pay its fees. *See* Petition ¶ 32, Ex. Q (AAA's 11/13/24 letter). On December 5, 2024, the AAA communicated the same message to the parties with regard to the remaining 4,982 claims, making clear that they would be reopened upon a court ordering MLBAM to pay its fees and restating that Claimants remained in full compliance with their filing obligations. *See* Petition ¶ 35, Ex. T (AAA's 12/5/24 letter).

### D. MLBAM Moved to Compel Other Related Class Actions to Arbitration

MLBAM has previously been eager to arbitrate nearly identical claims with its users. In 2022, a class action complaint was filed in the Northern District of Illinois against MLBAM alleging violations of the VPPA due to the presence of the Facebook Pixel in MLB.com's video assets and the subsequent disclosure of customer information without consent – i.e., virtually the same allegations at issue here. *See* Petition ¶ 36, Ex. U (*Hayes* Class Action Complaint). In a Motion to Dismiss in Favor of Arbitration, MLBAM wrote: "MLBAM's Terms of Use bind Plaintiff and his sole claim falls within the scope of the arbitration clause, [therefore] the Court should compel Plaintiff to arbitrate his case…" *See* Petition ¶ 36, Ex. V at 10 (Defendant's Motion

to Dismiss in favor of Arbitration in *Hayes*). Notably, MLBAM included as an exhibit to their motion in *Hayes* the very same Terms of Use in this action. *See* Petition ¶ 36, Ex. V (*Hayes* Motion at Ex. C). In 2023, MLBAM faced yet another lawsuit alleging VPPA violations tied to the Facebook Pixel technology. *See Carroll v. MLB Advanced Media LP*, No. 2:23-cv-01216-RGK-AFM, 2023 WL 3320325 (C.D. Cal. Feb. 24, 2023). In its Motion to Dismiss in that case, MLBAM stated:

> If Plaintiff were to amend his complaint to allege that he did in fact subscribe to one of MLBAM's digital products, MLBAM would move to dismiss on a different, equally compelling ground. If Plaintiff had subscribed to one of MLBAM's digital products, he would have agreed to a binding clause requiring him to arbitrate any disputes arising from his use of MLBAM digital products. MLBAM would thus move to dismiss Plaintiff's case for improper venue just as it did with another recent VPPA case [(*Hayes*)] concerning MLBAM's use of the Facebook pixel.

Defendant MLB Advanced Media L.P.'s Notice of Motion and Motion to Dismiss for Failure To State a Claim; Memorandum of Points and Authorities, *Carroll v. MLB Advanced Media LP,* C. D. Cal. Case No. 2:23-cv-01216-RGK-AFM ECF No. 21, 2023 WL 3320322 (Feb. 24, 2023) (internal citations omitted).

MLBAM has repeatedly taken the position that VPPA claims like Petitioners' fall within the scope of their arbitration provision.

## III. ARGUMENT

### A. Applicable Standard

The Federal Arbitration Act (9 U.S.C. §§1- 16 the "FAA") mandates that binding arbitration agreements in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. The FAA provides a remedy to a party "aggrieved by the . . . failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" – a judicial order requiring specific performance of the

arbitration agreement. 9 U.S.C. § 4. *see also, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (the FAA requires courts to compel arbitration of claims that the parties have agreed to arbitrate); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995) ("The federal arbitration statute 'requires that we rigorously enforce agreements to arbitrate.'").

In deciding a motion to compel arbitration, courts apply a simple two-part test: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002); *see also Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) ("courts consider two factors when deciding if a dispute is arbitrable: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)); *Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17 CIV. 589 (LGS), 2018 WL 1083968, at *2 (S.D.N.Y. Feb. 27, 2018), *aff'd*, 748 F. App'x 363 (2d Cir. 2018); *see also Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) ("The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012))). If these requirements are met, the FAA "mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985*); see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002). Since MLBAM and each Petitioner entered into a valid arbitration agreement applicable to Petitioners' underlying privacy claims, and because MLBAM has breached that agreement, this Court's role is clearly defined: it must "rigorously enforce the arbitration agreement in accordance with [its] terms," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013), and issue an

"order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The FAA "requires courts 'rigorously' enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 584 U. S. 497, 507 (2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (arbitration agreements should be construed "as broadly as possible" and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Where, as here, the parties have agreed to delegate questions regarding the enforceability or scope of an arbitration clause to an arbitrator, this Court need only determine that the parties have entered into a valid arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69-70 (2019). Any other issues are for the arbitrator to resolve.

**B. The Parties Entered into a Valid Arbitration Agreement.**

MLBAM entered into a valid arbitration agreement with each Petitioner. *See* Petition ¶ 16-17. Upon signing up for an MLB.com account by clicking the "Register" button or subscribing to MLB.TV by clicking the "Buy & Accept Terms" button, each Petitioner was automatically bound to the MLBAM Terms and Arbitration Provision. "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." Meyer v. Uber Techs., Inc., 868 F.3d 66, 75 (2d Cir. 2017) (quoting Sgouros v.

TransUnion Corp., 817 F.3d 1029, 1033–34 (7th Cir. 2016)); see also Palmer v. Starbucks Corp., 735 F. Supp. 3d 407 n. 5 (S.D.N.Y. 2024) ("[C]ourts consistently enforce arbitration agreements that were electronically signed.") (citing Armstead v. Starbucks Corp., No. 17-CV-1163 (PKC), 2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017)); Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) (ruling it was enough for contract formation for plaintiff to be "informed of the consequences of his assenting click and . . . was shown, immediately below, where to click to understand those consequences").

As evinced by Petitioners' sworn statements attached to the Petition, each Petitioner has signed up for an MLB.com or MLB.TV account and agreed to MLBAM's Terms. Each Petitioner's statement includes the email address associated with their account as well as an affirmative declaration by each Petitioner that they have elected to pursue their privacy claims through individual arbitrations administered by AAA under MLBAM's Terms of Use last updated on February 4, 2020. This evidence establishes that Petitioners entered into agreements to arbitrate with MLBAM, which is all that is required to compel arbitration. *See Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1066 (N.D. Cal. 2020) (compelling company to arbitrate with 5,010 petitioners who submitted declarations attesting to their electronic consent to an arbitration agreement provided by the company); *see also* Petition ¶ 36, Ex. V at 9 ("Plaintiff's pleadings and the factual record — which this Court can and should consider on a motion to compel arbitration — make clear that MLBAM's digital properties put Plaintiff on notice that registering would bind him to the Terms of Use.") (internal citations omitted); *Yorke v. TSE Grp. LLC*, No. 18-CV-5268 (JMF), 2019 WL 3219384, at *1 (S.D.N.Y. July 17, 2019) (Courts must consider all relevant, admissible evidence submitted by the parties including affidavits). Nothing more than Petitioners' sworn statements is required to compel arbitration in the absence of any material factual dispute

that they are MLB.com account holders and MLB.TV subscribers who have watched video content through MLBAM's digital properties.

### C. The Parties' Arbitration Agreement Unquestionably Encompasses the Present Disputes.

#### 1. The contractual language unmistakably covers Petitioners' underlying claims.

MLBAM's Arbitration Provision states: "Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties...shall be settled by binding arbitration." *See* Petition ¶ 16, Ex. B at Section 1. While any questions as to the scope of this clause are for the arbitrator as set forth in detail below, Petitioners' underlying claims are undoubtedly arbitrable.

The Supreme Court has instructed that, "[i]n determining the scope of an arbitration agreement, 'there is a presumption of arbitrability'" and "[d]oubts should be resolved in favor of coverage." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)). Here, Petitioners allege statutory and common law privacy violations based on their use of MLB.com and MLB.TV's services and websites. Both MLB.com and MLB.TV's services and websites are MLBAM "Digital Properties" expressly within the meaning of MLBAM's Terms of Use. *Id.* ("MLB.com . . . and all materials contained in this Website and/or otherwise accessible via other [MLBAM]-controlled products or services…will be referred to herein collectively as the 'MLB Digital Properties'"). MLBAM's arbitration provision reads: "Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties...shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA")." *See* Petition ¶ 16, Ex. B at Section 11.1. The Arbitration Provision in the MLBAM Terms therefore covers the present dispute – as MLBAM itself has previously argued. *See* Petition

¶ 36, Ex. V at 10 (insisting that MLB.com is a digital property and thus "within the broad coverage of the arbitration clause in the Terms of Use"); *see also Perry v. MLB Advanced Media, L.P.*, Case No. CV 18-1548 PSG (GJSx), 2018 WL 5861307 (C.D. Cal. May 30, 2018) (enforcing the broad arbitration clause in MLBAM's Terms of Use); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *4 (S.D.N.Y. Nov. 20, 2017) (compelling arbitration of VPPA claim under Terms of Use mandating that "[a]ny claim or controversy at law or equity that arises out of the Terms of Use, the Barnes & Noble.com Site or any Barnes & Noble.com Service" be "resolved through binding arbitration"). The MLBAM Arbitration Provision includes an extremely broad definition of what disputes must be submitted to an arbitrator.

Even if there was any ambiguity about whether Petitioners' claims fall within the scope of the Arbitration Provision, which there is not, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."); *Safra Sec., LLC v. Gonzales*, 764 F. App'x 125, 125–26 (2d Cir. 2019) (quoting same).

Petitioners' claims are directly related to "matters covered by the parties' contract[]" and "must be arbitrated." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (arbitration clause encompassing "any and all differences and disputes of whatsoever nature arising out of this Charter" is "at least as expansive as the language contained in a number of arbitration clauses that this Court has characterized as 'broad'"); *see also Hatemi v. M&T Bank*,

633 F. App'x 47, 49 (2d Cir. 2016) (finding that an arbitration clause concerning "any claim or controversy arising out of or relating to the agreement is paradigm of a broad clause") (internal quotation omitted).

**2. The operative contract delegates any disputes regarding arbitrability, including questions regarding the scope of the MLBAM Arbitration Provision, to the arbitrator.**

Even if MLBAM disputes the scope of the arbitration clause, the contract also delegates questions of arbitrability to the arbitrator. MLBAM's Arbitration Provision expressly incorporates the AAA's "then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable" in place at the time of agreement. *See* Petition ¶ 16, Ex. B at Section 11.1. By designating the Consumer Rules to govern disputes, MLBAM and Petitioners are "deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration" is "an essential term" of the consumer arbitration agreement. *See* Petition ¶ 19, Ex. F at Rule 1(a); *see also See* Petition ¶ 19, Ex. F at Rule1(b) ("[w]hen parties agree to arbitrate under [the Consumer Rules] and an arbitration is initiated under [the Consumer] Rules, they thereby authorize the AAA to administer the arbitration."). Consistent with the parties' intent to delegate the resolution of all claims relating to the MLBAM digital properties to the AAA, if the parties dispute the enforceability of the arbitration provision or how that provision should be applied, that dispute must itself be decided by an arbitrator. The AAA Consumer Rules state that the arbitrator will resolve "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Petition ¶ 19, Ex. F at Rule 14(a); *see also* Petition ¶ 19, Ex. F at Rule 53 (where a rule does not involve the "arbitrator's powers and duties," the Consumer Rules "shall be interpreted and applied by the AAA.").

The Supreme Court has held that when an arbitration agreement "clearly and unmistakably" contains a "delegation provision" – i.e., a clause delegating "threshold issues" of arbitrability to the arbitrator – "the FAA operates on this additional arbitration agreement just as it does any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 & n.1 (2010) (internal quotation marks omitted). In other words, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract" and "may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

Indeed, numerous courts have held that the incorporation of AAA's rules into an arbitration clause can provide the requisite clear and unmistakable evidence of an intention to arbitrate arbitrability. *See e.g., DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021) ("[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this – coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability – constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator."); *See Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) ("[T]he clearer it is from the agreement that the parties intended to arbitrate the particular dispute presented, the more logical and likely the inference that they intended to arbitrate the arbitrability of the dispute.); *See Contec Corp. v. Remote Sol.*, *Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (arbitration clause agreeing to submit to arbitration "any controversy arising with respect to" the agreement, read in conjunction with incorporation of AAA Rules, constituted clear and unmistakable evidence of intent to arbitrate arbitrability); *see also Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014) (incorporation of AAA rules clear indication of parties' intent to delegate); *K.F.C. by & though*

*Clark v. Snap, Inc.*, Case No. 3:21-cv-9-DWD, 2021 WL 2376359, at *3 (S.D. Ill. June 10, 2021) ("Snap's incorporation of the AAA's rules provides clear and unmistakable evidence of intent to delegate threshold issues of the 'existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim' to the arbitrator."); *Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, No. 14-cv-8457, 2016 WL 4036754, at *6 (N.D. Ill. July 28, 2016) (noting that Illinois district courts, along with courts of appeal in the 1st, 2nd, 5th, 8th, 9th, 11th, and Federal Circuits, have consistently held that a clause requiring arbitration according to AAA Rules requires the arbitrator to resolve arbitrability disputes); *O'Connor v. Ford Motor Co.*, Case No. 19-cv-5045, 2023 WL 130522, at *4 (N.D. Ill. Jan. 9, 2023) ("While the Seventh Circuit "has not decided whether an arbitration agreement's incorporation of the AAA Rules qualifies as a 'clear and unmistakable' agreement to arbitrate arbitrability . . . the consensus view among district courts in this circuit and among the other appellate circuits holds that reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator."); *see also, e.g, Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*, 204 A.D.3d 506, 510 (N.Y. App. Div. 2022); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc*, 363 F.3d 1010, 1011–13 (9th Cir. 2004).

MLBAM's Terms of Use specifically reference particular AAA rules. *See* Petition ¶ 16, Ex. B at Section 11.1 ("Any and all disputes… shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable.") Further, there is no qualifying language which might indicate anything other than a broad, all-encompassing delegation to the arbitral forum. As such, Petitioners' claims are inarguably covered by the arbitration provision in MLBAM's Terms of Use, and any disputes over arbitrability must be decided by a AAA arbitrator rather than a Court.

**3. MLBAM is estopped from asserting that claims related to its Digital Products do not belong in arbitration.**

Further, MLBAM itself has argued to a federal court that VPPA claims like Petitioners' fall within the scope of the very same arbitration agreement at issue here. In *Hayes*, MLBAM argued that a VPPA claim "falls squarely within the broad coverage of the arbitration clause in the Terms of Use…[as] the Terms of Use specify that '[a]ny and all disputes, claims or controversies arising out of or relating to…any use of the [MLBAM] Properties…shall be settled by binding arbitration'…[and] [t]hat [the] arbitration clause easily encompasses Plaintiff's cause of action under the VPPA." *See* Petition ¶ 36, Ex. V at 10. Then in *Carroll*, MLBAM went out of its way to preserve this position, including a footnote to its Motion to Dismiss that "[i]f Plaintiff had subscribed to one of MLBAM's digital products, he would have agreed to a binding clause requiring him to arbitrate any disputes arising from his use of MLBAM digital products." Mot. to Dismiss, *Caroll* at n.2. Finally in 2016, MLBAM successfully compelled a Plaintiff to arbitration over a dispute involving another of its digital products, MLB Prime. *See Perry*, 2018 WL 5861307. Notably there, MLBAM successfully defeated arguments that their Terms were unconscionable and thus unenforceable. *See Perry, Id.* at *7 ("Because both the procedural *and* substantive unconscionability of the Arbitration Provision and its terms are minimal, the Court concludes that the Arbitration Provision is not unconscionable"). MLBAM's sudden avoidance of its commitment to arbitration in these claims would represent a stark deviation from positions it has maintained consistently over the last several years.

MLBAM's prior position on these issues estops them from taking a contrary position here. "Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party

who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001) citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895); s*ee also Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (citing *New Hampshire*, 532 U.S. 742) ("Judicial estoppel functions to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"); *Ford Motor Credit Co. v Colonial Funding Corp.,* 215 A.D.2d 435, 436 (N.Y. App. Div. 1995) (internal quotation marks omitted) ("The doctrine is invoked to estop parties from adopting such contrary positions because the judicial system cannot tolerate this playing fast and loose with the courts.")

MLBAM has continually maintained that disputes under their Terms of Use belong in arbitration. The Court should recognize the potential prejudice likely to befall Petitioners if MLBAM now be allowed to advance a contrary position. This risk is especially highlighted when considering *Hayes* – a class action that involved identical claims. Petitioners, here, could have been members of that class, though the matter was voluntarily dismissed before the class could be finalized. *See* Petition ¶ 36, Ex. W (*Hayes* Not. of Vol. Dismissal). Nevertheless, Petitioners have reasonably relied on MLBAM's position that these disputes belong in arbitration. Now, just two years later, MLBAM insists on the opposite. *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (A Court must consider whether the balance of equities have been tipped in favor of the party advocating for a position inconsistent with prior ones).

### D. MLBAM has Breached the Mutual Arbitration Provision by Refusing to Pay its Filing Fees and Arbitrate in Accordance with its Terms.

MLBAM's continued refusal to arbitrate matters in accordance with the agreement it forced on Petitioners is a straightforward failure or refusal to arbitrate. On October 2, 2024, AAA sent correspondence to both parties indicating that Petitioners had satisfied all filing requirements, but that MLBAM still owed its portion of the filing fees. *See* Petition ¶ 29, Ex. M. MLBAM has

steadfastly refused to pay those fees and AAA has permitted Petitioners to seek a Court order compelling MLBAM to arbitrate. As AAA instructed, "if either party returns with a Court Order serving to reopen these matters, [AAA] will not require Claimants to submit a new Initiation Fee, [but] would still require Respondent's portion to be paid immediately upon reopening the caseload." *See* Petition ¶ 32, Ex. Q; see also Petition ¶ 35, Ex. T. To the extent that MLBAM argues that AAA's determination means that the parties have had their arbitration, that is not what AAA provided in its determination that it would not proceed with administration of the arbitrations.

Courts in this district have repeatedly addressed instances like this one where companies refuse to pay filing fees as required by their contracts by compelling those companies to arbitration and mandating that they pay their arbitral fees. *See, e.g., Frazier v. X Corp*, 739 F. Supp. 3d 219 (S.D.N.Y. 2024) (granting a motion to compel arbitration and ordering defendant to pay filing fees). In *Brooks v. WarnerMedia Direct, LLC*, No. 23 CIV. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024), Petitioners sought to enforce the arbitration provision in their contract with defendant, Warner Media, which provided for AAA administration. The allegations therein also concerned violations of the VPPA by HBO Max, a streaming service akin to MLBAM's services at issue here. Warner Media defaulted on its arbitration obligations by failing to pay $500 to register the clause with AAA's Consumer Clause Registry – a ministerial requirement. The Court found that it had the authority to compel arbitration before AAA, including the authority to compel the Respondent to pay AAA's registration fee:

> Here, the AAA made it clear that it "remains available to administer the parties' arbitrations upon [Respondent]'s compliance with [the AAA's] request to register its arbitration clause or per a court order compelling these matters to arbitration administered by the AAA[.]" Accordingly, an order compelling the parties to proceed to arbitration in accordance with the AAA's rules would not

> circumvent the AAA's interpretation and application of its own rules in its administration of the instant dispute. Moreover, the Court need not "compel Respondent to 'register[ ] its arbitration agreement with [the] AAA and pay[ ] necessary fees,' " (Resp. Opp. 13) as . . . the AAA has not excused Respondent's failure to pay those fees or asked Petitioners to advance the fees on Respondent's behalf. This Court need only compel the parties to proceed to arbitration in accordance with the AAA's rules; if, thereafter, the AAA requires Respondent to pay certain fees or otherwise, this Court's order would incorporate the AAA's direction.

*Brooks,* at *6–7. (internal record citations omitted).[3]

In the present matter, AAA issued an order featuring nearly identical language as in *Brooks*, i.e., that AAA would resume administering the matters following payment of the appropriate fees or a court order compelling MLBAM to pay them. AAA's December 5, 2024 letter states: "[p]ursuant to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution," and that "if either party returns with a Court Order serving to reopen these matters, [AAA] will not require Claimants to submit a new Initiation Fee, [but] would still require Respondent's portion to be paid immediately upon reopening the caseload." *See* Petition ¶ 35, Ex. T. An Order from the Court compelling MLBAM to fulfill its obligations related to arbitration would nonetheless be consistent with AAA's application of its own rules and in compliance with the agreement entered into by both parties.

## IV. THE COURT SHOULD STAY THIS PROCEEDING PENDING RESOLUTION OF THE ARBITRATION PROCESS.

In addition to compelling MLBAM to arbitrate, Petitioners request a stay pursuant to 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an

[3] The Court has reserved overall judgment on the Motion pending further discovery on assent *vel non* to a modified arbitration agreement.

> agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Indeed, "[a] district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *see also Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, . . . the FAA compels the court to stay the proceeding."); *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested."

Further, "staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. The FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration by, for example, appointing an arbitrator, *see* 9 U.S.C. § 5; enforcing subpoenas issued by arbitrators to compel testimony or produce evidence, *see* 9 U.S.C. § 7; and facilitating recovery on an arbitral award, *see* 9 U.S.C. § 9. Keeping this suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections." *Smith*, 601 U.S. at 478.

Given MLBAM's naked refusal to honor its own agreement – including by ignoring directives from AAA, the arbitral forum which it selected – a stay is necessary and appropriate to ensure future compliance. Moreover, it is in the interest of all parties to avoid undue costs or delays should they again find need to seek redress with the Court if new issues arise.

### A. The California Petitioners are Entitled to their Reasonable Attorneys' Fees in Connection with this Action.

California Code of Civil Procedure § 1281.97, part of the California Arbitration Act ("CAA"), applies to the claims of the 749 Petitioners who reside in California (the "California Petitioners"). *See* Petition ¶ 38, Ex. X. It provides the California Petitioners with a statutory right to recover their reasonable attorneys' fees incurred as a result of MLBAM's material breach of its arbitration agreement. More specifically, that statute provides, in relevant part, that a company like MLBAM "is in material breach of the arbitration agreement" it drafted and imposed on consumers if it fails to pay the "fees or costs to initiate arbitration . . . within 30 days after the due date." *Id.* Further, when such a company "materially breaches the arbitration agreement . . . the . . . consumer may . . . [c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." *Id.*

There is no question that MLBAM has materially breached its arbitration agreement for the purposes of Section 1281.97. Indeed, the purpose of Section 1281.97 is to curb precisely the kind of unfair gamesmanship MLBAM has attempted here. The California legislature enacted the CAA's provisions in response to companies like MLBAM "refusing to pay fees and costs required to initiate arbitration, effectively placing [consumers] in a procedural limbo." S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019). There is likewise no question that the 749 California Petitioners retain the protection of their home-state laws, including Section 1281.97, regardless of any contractual provision invoking the application of the FAA. *See Nyerges v. Pac. Sunwear of Cal., LLC*, No. 21-CV-01123-CJC-DFM-X, 2022 WL 20717551, at *3 (C.D. Cal. July 6, 2022) (holding that the CAA applies "in any arbitration involving California employees or consumers" and finding that "the California legislature meant to offer a mechanism for ensuring the efficiency of any arbitration, not just those being compelled pursuant to the CAA"); *Doe v. Laws. for Emp. &*

*Consumer Rts.*, No. 2D CIV B330052, 2024 WL 1203776, at *2 (Cal. Ct. App. Mar. 21, 2024) (rejecting the argument that CAA is not applicable "because the arbitration agreement provides the arbitration is conducted under [FAA] rules" and holding that "even when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles" and CAA is "part of the substantive law of contracts in California"), *petition for review filed*, No. S284810 (Cal. Apr. 30, 2024); *see also Postmates Inc. v. 10,356 Individuals*, No. 20-cv-02783, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021), at *1; *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 746 (Cal. Ct. App. 2022).

Accordingly, this Court should require MLBAM to pay the California Petitioners' reasonable attorney's fees incurred in connection with bringing this action and set a schedule for the submission of proof of the amount of those fees.

## V. CONCLUSION

For the foregoing reasons, Petitioners' claims, as well as any defenses MLBAM may have to the enforceability or applicability of Petitioners' arbitration agreements, as well as the arbitrability of Petitioners' claims or their merits, should be compelled to arbitration and this Court should order MLBAM to pay the California Petitioners' reasonable attorney's fees and retain jurisdiction to oversee further proceedings in aid of arbitration, subject to review of an application for fees and costs.

Dated: April 8, 2025

Respectfully submitted,

By: ______________________

Jonathan D. Waisnor
Jonathan Gardner
James Fee
Shannon K. Tully
Alexander F. Schlow
Stephen Kenny

**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Fl.
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jwaisnor@labaton.com
jgardner@labaton.com
jfee@labaton.com
stully@labaton.com
aschlow@labaton.com
skenny@labaton.com

*Attorneys for Petitioners*