**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

IAN MOORE AND 5,629 OTHER
INDIVIDUALS,

                    Petitioners,

      v.

MLB ADVANCED MEDIA, L.P.,

                    Respondent.

Case No. 1:25-cv-03121-AT

---

**RESPONDENT MLB ADVANCED MEDIA, L.P.'S OPPOSITION TO**
**PETITIONERS' MOTION TO COMPEL ARBITRATION**
**AND CROSS-MOTION TO SEVER PETITIONERS' CLAIMS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ..............................................................................................1

BACKGROUND ................................................................................................2

    I.    MLBAM's 2024 amendments to its TOU make clear that VPPA claims
        like Petitioners' belong in court, not arbitration. ......................................2

        A.    Users agree to MLBAM's TOU in different ways. ...................................2

        B.    MLBAM gave users conspicuous notice that continued use of
               MLBAM digital properties after TOU amendments in 2024
               constitutes assent.....................................................................4

        C.    MLBAM's 2024 TOU exempts VPPA and related privacy claims
               like Petitioners' from arbitration..................................................6

    II.    Petitioners filed their VPPA claims well after MLBAM adopted and
        provided notice of its 2024 TOU. .............................................................6

    III.    MLBAM's investigation confirms that nearly all Petitioners continued to
        use MLBAM's digital properties after the 2024 TOU took effect. .........8

    IV.    No matter which TOU governs, New York law applies, and Petitioners
        may not bring a consolidated action. ........................................................9

ARGUMENT ..................................................................................................10

    I.    Petitioners' claims are improperly joined and should be severed.........10

    II.    The Court should deny Petitioners' motion to compel arbitration. .......14

        A.    The motion of 655 Petitioners, including Moore's, should be
               denied as moot. ......................................................................15

        B.    The remaining Petitioners have failed to meet their burden of
               establishing an agreement to arbitrate.......................................16

        C.    MLBAM's evidence confirms that Petitioners' motion should be
               denied.....................................................................................19

        D.    MLBAM is not estopped from opposing Petitioners' motion to
               compel.....................................................................................24

    III.    Petitioners are not entitled to fees. ........................................................25

CONCLUSION ................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
  795 F.2d 238 (2d Cir. 1986)..................................................................................... 11

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013).................................................................................................... 15

*Amica Mut. Ins. Co. v. Kingston Oil Supply Corp.*,
  134 A.D. 3d 750 (N.Y. App. Div. 2015) .................................................................. 17

*Anoke v. Twitter, Inc.*,
  105 Cal. App. 5th 153 (Cal. Ct. App. Aug. 27, 2024) .............................................. 28

*Aubrey v. New Sch.*,
  624 F. Supp. 3d 403 (S.D.N.Y. 2022)........................................................................ 4

*Barrows v. Brinker Rest. Corp.*,
  36 F.4th 45 (2d Cir. 2022) ................................................................................. 14, 22

*Belyea v. GreenSky, Inc.*,
  637 F. Supp. 3d 745 (N.D. Cal. 2022) ..................................................................... 27

*Brooks v. WarnerMedia Direct, LLC*,
  2024 WL 3330305 (S.D.N.Y.July 8, 2024) ....................................................... 23, 24

*Carroll v. MLB Advanced Media L.P.*,
  No. 2:23-CV-01216 (C.D. Cal.)............................................................................... 25

*Cifarelli v. Vill. of Babylon*,
  93 F.3d 47 (2d Cir. Aug. 16, 1996).......................................................................... 16

*City, of Peekskill*,
   673 F. Supp. 2d  (S.D.N.Y. 2009) .......................................................................... 13

*Corley v. Google, Inc.*,
  316 F.R.D. 277 (N.D. Cal. 2016).............................................................................. 13

*Cronus Inv., Inc. v. Concierge Servs.*,
  35 Cal. 4th 376 (2005) ............................................................................................. 26

*De Leon v. Juanita's Foods*,
  85 Cal. App. 5th 740 (Cal. App. Ct. 2022) .............................................................. 27

*DeRosa v. Nat'l Envelope Corp.*,
  595 F.3d 99 (2d Cir. 2010).................................................................................. 24, 25

*Doe v. Law. for Emp. and Consumer Rts., APC*,
  2024 WL 1203776 (Cal. Ct. App. Mar. 21, 2024) ................................................. 27

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  314 F.R.D. 85 (S.D.N.Y. Mar. 15, 2016) ........................................................ 15

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ...................................................................... 14

*Hastings v. Nifty Gateway, LLC*,
  724 F. Supp. 3d 241 (S.D.N.Y. 2024) ........................................................ 20

*Hayes v. Major League Baseball Advanced Media, L.P.*,
  No. 1:22-CV-05822 (N.D. Ill.) .............................................................. 24

*Hernandez v. Sohnen Enters., Inc.*,
  102 Cal. App. 5th 222 (Cal. Ct. App. 2024) ............................................... 26, 27

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) ............................................................ 15

*In Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal ............................................................ 18

*In re MBTE Prods. Liab. Litig.*,
  241 F.R.D. 185 (S.D.N.Y. 2007) ............................................................ 13

*Intellivision v. Microsoft Corp.*,
  484 F. App'x 616 (2d Cir. 2012) ........................................................... 24

*Kalie v. Bank of Am. Corp.*,
  297 F.R.D. 552 (S.D.N.Y. 2013) ............................................................ 11

*Khowala v. Vivint Smart Home, Inc.*,
  2024 WL 3638265 (S.D.N.Y. Aug. 1, 2024) ............................................... 23, 24

*Kindred Nursing Ctrs. L.P. v. Clark*,
  581 U.S. 246 (2017) ...................................................................... 27

*Kramer v. Greene*,
  36 N.Y.S. 3d 448 (N.Y. App. Div. 2016) .................................................... 17

*Lee v. Citigroup Corp. Hldgs., Inc.*,
  2023 WL 6132959 (N.D. Cal. Aug. 29, 2023) ............................................... 28

*Mayfield v. Asta*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015) ........................................................ 17

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)................................................................................ 14, 20

*Moore v. MLB Advanced Media, L.P.*,
    No. 1:25-cv-02880-AT (S.D.N.Y. Apr. 14, 2025) ................................................ 13

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) .................................................................. 14

*Nolan v. Int'l Bus. Machs. Corp.*,
    2025 WL 1078392 (S.D.N.Y. Ap. 10, 2025) ........................................................ 12

*Nygeres v. Pacific Sunwear of Cal., LLC*,
    2022 WL 20717551 (C.D. Cal. July 6, 2022)........................................................ 27

*Patterson v. Cnty. of Oneida, N.Y.*,
    375 F.3d 206 (2d Cir. 2004)................................................................................. 16

*Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ............................................................. 20, 21

*Perry v. MLB Advanced Me*dia, L.P,
    2018 WL 5861307 (C.D. Cal. May 30, 2018) ....................................................... 24

*Pilon v. Discovery Comms., LLC*,
    -- F. Supp. 3d --, 2025 WL 752244 (S.D.N.Y. 2025) ........................................... 17

*Pincaro v. Glassdoor, Inc.*,
    2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017)................................................. 20, 21

*Postmates Inc. v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. Jan. 19, 2021) ......................................................... 27

*Rodriguez v. Am. Techs., Inc.*,
    136 Cal. App. 4th 1110 (Cal. App. Ct. 2006) .................................................. 26, 27

*Russell v. Siemens Indus. Software Inc.*,
    2024 WL 4545970 (N.D. Cal. Oct. 21, 2024)........................................................ 27

*Schnable v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)................................................................................ 14

*Smith v. RPA Energy, Inc.*,
    732 F. Supp. 3d 278 (S.D.N.Y. 2024).................................................................. 22

*Syville v. N. Y. C. of N. Y.*,
    2020 WL 2508788 (S.D.N.Y. May 15, 2020) ................................................. 12, 13

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) .................................................................................. 14

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022) ........................................................................... 27, 28

*Wallrich v. Samsung Elects. Am., Inc.*,
   106 F.4th 609 (7th Cir. 2024) ................................................................. 18

*Wu v. Uber Techs., Inc.*,
   -- N.E.3d --, 2024 WL 4874383 (N.Y. 2024) ........................................ 21

*Yorke v. TSE Grp., LLC*,
   2019 WL 3219384 (S.D.N.Y. July 17, 2019) ......................................... 19

*Zachman v. Hudson Valley Fed. Cred. Union*,
   49 F.4th 95 (2d Cir. 2022) ................................................. 14, 15, 22, 23

**Statutes**

Cal. Civ. P. Code § 1281.97 .................................................... 26, 27, 28

Cal. Civ. P. Code § 1281.97(b) ....................................................... 28

**Rules**

Fed. R. Civ. P. 20(a) ........................................................................ 11

Fed. R. Civ. P. 21 ............................................................................ 12

## INTRODUCTION

Petitioners present their motion to compel arbitration as a straightforward, unified request: 5,630 individuals seeking to arbitrate the same claim against MLB Advanced Media, L.P. ("MLBAM") under one statute based on a single contract. But that is a false narrative. Petitioners' motion differs from a typical motion to compel arbitration because it involves two distinct contracts: an old and a new Terms of Use ("TOU"). The new TOU requires claims like Petitioners' to be brought in court, while the old version required those claims to be brought in arbitration. Determining which TOU applies to each Petitioner turns on many individual questions, including when, if ever, the Petitioner interacted with an MLBAM service, last agreed to MLBAM's TOU, and filed an arbitration demand. Indeed, ***655 Petitioners, including named Petitioner Ian Moore, are already arbitrating or have arbitrated these same claims against MLBAM*** under the old TOU through separate counsel. And the remaining Petitioners did not initiate arbitration before MLBAM updated its TOU to require privacy-related claims like theirs be brought in court. These Petitioners now seek to resurrect the old TOU with terms they prefer. But these Petitioners either agreed to the updated TOU barring their arbitrations (and making New York state or federal court the proper forum) or MLBAM's evidence raises a genuine dispute about which TOU applies.

Because Petitioners' arbitration claims turn on separate questions that do not overlap, their petition is procedurally improper under Federal Rule of Civil Procedure 20, which governs the proper joinder of claims. Petitioners should not have joined themselves in a single petition because their requests to arbitrate raise individualized questions requiring individualized proof of an agreement. So this Court need not reach the merits of Petitioners' motion to compel except for Moore, and should instead sever the remaining Petitioners' claims as misjoined under Rules 20 and 21 and direct Petitioners to refile individually.

But even if the Court considers Petitioners' motion in full, it should be denied across the

board because Petitioners have failed to meet their burden of establishing that they entered an agreement to arbitrate. Petitioners submitted nothing more than generic declarations that lack details to support their assertion that MLBAM has an obligation to arbitrate. These declarations fall far short of meeting their burden under the applicable summary-judgment standard. That alone warrants denial of the motion. The motion also fails for four other reasons: (1) 655 Petitioners' claims are already in arbitration, so their requests are moot; (2) 363 Petitioners have no MLB.com account and thus no evidence of any agreement; (3) 5,120 Petitioners[1] indisputably assented to the new TOU that bars arbitrating Video Privacy Protection Act ("VPPA") claims; and (4) MLBAM's records show a genuine dispute of fact as to whether 145 Petitioners have a current agreement to arbitrate with MLBAM—an issue that will require discovery and individual trials to resolve.

The Court should thus sever the Petitioners' arbitration claims and deny Moore's motion to compel arbitration, or if the Court considers the motion for all Petitioners, deny the motion in its entirety.

## BACKGROUND

### I.   MLBAM's 2024 amendments to its TOU make clear that VPPA claims like Petitioners' belong in court, not arbitration.

#### A.   Users agree to MLBAM's TOU in different ways.

MLBAM operates numerous digital properties, including MLB.com and MLB.TV, which alert users to MLBAM's TOU in a variety of ways. (*See* Declaration of Joshua Frost ("Frost Decl.") ¶¶ 3–4, 13–15.) When a new user registers for an MLB.com account, they are taken to a "Log In" page, where they can "Sign up." (*Id.* ¶¶ 5, 18–19.) After clicking "Sign Up," users are

---

[1] Unless otherwise stated, MLBAM's calculations of the number of Petitioners with MLB.com accounts and who continued to use MLBAM's digital properties after February 6, 2024, are based on a total of 5,628, the number of Petitioners who submitted declarations, including those already arbitrating their VPPA claims.

taken to a registration page. (*Id.* ¶¶ 15–17.) To create an MLB.com account, the user must click

the button labeled "Register," below which the following text appears: "I understand and agree to

be bound by the MLB.com Terms of Use and Privacy Policy." (*See id.* ¶¶ 16–17.) Both MLBAM's

TOU and Privacy Policy appear as clickable hyperlinks—offset by blue font—on the login and

registration pages:





(*Id.* ¶ 18 (MLB.com Login Page); *id.* ¶ 16 (MLB.com Registration Page).) Users also receive

notice of the TOU when taking other actions on MLBAM's digital properties, including

subscribing to MLB.TV, purchasing game tickets, or using an MLBAM mobile app. (*See id.*

¶¶ 21–36.)

**B.    MLBAM gave users conspicuous notice that continued use of MLBAM digital properties after TOU amendments in 2024 constitutes assent.**

Before February 6, 2024, MLBAM's digital properties were governed by a TOU last updated on February 4, 2020. (Frost Decl., Ex. A-1, 2020 TOU ("2020 TOU") at 7 ("LAST UPDATED: FEBRUARY 4, 2020").) Sections 13 and 14 of the 2020 TOU explain how it may be modified. Section 13 provides that "MLB in its sole discretion may amend this Agreement, in which case we will post the amended Agreement within the MLB Digital Properties." (*Id.* § 13.) That section continues: "Your use of the MLB Digital Properties after such amended Agreement is posted will constitute acceptance of it by you." (*Id.*) Section 14, "**ACCEPTANCE OF TERMS OF USE**," confirms in all capital letters that "BY USING AN MLB DIGITAL PROPERTY, YOU SIGNIFY YOUR AGREEMENT TO THE TERMS OF THIS AGREEMENT." (*Id.* § 14.) Thus, "[i]f you do not agree to the terms in this Agreement, you must not use any of the MLB Digital Properties." (*Id.*) Section 14 repeats the amendment procedure contained in Section 13. (*Id.*)

MLBAM used the agreed process to amend its TOU by publishing updated Terms on February 6, 2024. Although the TOU did not require separate notice of amendments, MLBAM notified all registered users by email of the updated TOU taking effect that day:



(Frost Decl., ¶ 12; *id.* Ex. A-4, 2/6/24 MLBAM Email to All Users.)

MLBAM also "post[ed] the amended Agreement within the MLB Digital Properties." (*See* Frost Decl., Ex. A-2, 2024 TOU ("2024 TOU") § 13.) Banners on MLB.com conspicuously disclosed that the TOU had been modified and that continuing to use MLBAM's properties constituted agreement to the revised TOU:

We store cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. The **MLB Privacy Policy** and **Terms of Use Agreement** have been updated, effective February 6, 2024, to encompass all MLB.com and Minor League Club digital properties, and to update the arbitration and dispute resolution procedures, among other changes. By continuing to use our services, you agree to the updated Privacy Policy and Terms of Use Agreement.

Cookies Settings     OK     ✕

(Frost Decl. ¶ 13.) MLB.com requires that users acknowledge this banner by taking some action (e.g., by clicking "OK" within the banner) before they can click to another part of the website. (*Id.*) Both the email and banner explained, "**The MLB Privacy Policy and Terms of Use Agreement have been updated**, effective February 6, 2024, to encompass all MiLB.com and Minor League Club digital properties, ***and to update the arbitration and dispute resolution***

*procedures*, among other changes. ***By continuing to use our services, you agree to the updated Privacy Policy and Terms of Use Agreement*****.**" (*Id.* (emphases added).) The Privacy Policy and 2024 TOU were also hyperlinked with bold, blue font. (*Id.*) The language of the banner changed slightly in 2025,[2] but still states, "By continuing to use our services, you agree to the MLB Privacy Policy and Terms of Use Agreement," with the respective agreements hyperlinked. (*Id.* ¶ 14.)

**C.    MLBAM's 2024 TOU exempts VPPA and related privacy claims like Petitioners' from arbitration.**

Petitioners raise claims under the VPPA and related state privacy laws. (*See* Pet. to Compel Arbitration ("Pet.") ¶ 10, ECF No. 2.) But the 2024 TOU contains a broad dispute-resolution clause precluding arbitration of VPPA and other privacy-related claims. It defines "Non-Arbitrable Claims" as "any dispute or claim related to the alleged violation of your privacy rights or interests . . . including but not limited to: (i) claims under the Video Privacy Protection Act and corresponding state video privacy laws; . . . or (iii) any other alleged violation of your privacy rights or interests that is based on the use of technology." (2024 TOU § 11(1).) As the name indicates, "Non-Arbitrable Claims" like Petitioners' "***may only be brought in a court of competent jurisdiction***." (*Id.* (emphasis added).) And only a court can decide "issues that relate to the scope, validity, and enforceability of the arbitration agreement . . . ." (*Id.*)

**II.    Petitioners filed their VPPA claims well after MLBAM adopted and provided notice of its 2024 TOU.**

On February 14, 2024—eight days after the 2024 TOU took effect—Petitioners' counsel first sent MLBAM a letter claiming to represent 5,771 individuals alleging VPPA claims. (Declaration of Alan E. Littmann ("Littmann Decl."), Ex. B-2, 2/14/24 Nafash Letter to MLBAM

---

[2] MLBAM amended its TOU in 2025 to add one provision relevant only to users in Japan. (Frost Decl. ¶ 9 n.1.)

at 1.) Petitioners' counsel acknowledged "that MLB recently attempted to change its dispute resolution provision in its Terms," but claimed "this change [wa]s unenforceable due to, inter alia, the lack of a meaningful opt-out opportunity." (*Id.* at n.1.) MLBAM responded that the 2020 TOU Petitioners invoked was no longer "its operative Terms of Use" and requested that Petitioners provide "support for [the] statement" that the 2024 TOU "is unenforceable." (*Id.*, Ex. B-3, 2/22/24 Littmann Letter to Nafash (quoting Ex. B-2 at n.1).) Petitioners' counsel responded with no legal or factual support. (*Id.*, Ex. B-4, 3/11/24 Nafash Letter to Littmann.)

In September 2024—more than six months after the 2024 TOU took effect—Petitioners filed 5,746 VPPA claims against MLBAM with the American Arbitration Association ("AAA"). (*Id.*, Ex. B-5, 9/5/24 Tully Email to AAA.) Petitioners' counsel followed up with a letter in October 2024 purporting to give MLBAM notice of 4,781 VPPA claims against it. (*Id.*, Ex. B-6, 10/3/24 Nafash Letter to Littmann.) MLBAM promptly responded that "neither these claims, nor the 5,771 claims you have previously referred to in earlier correspondence, are arbitrable." (*Id.*, Ex. B-7, 10/4/24 Littmann Letter to Nafash at 1.) One month later, the AAA sent a letter stating that it would close the cases of California-based Petitioners because MLBAM had not paid an invoice it purportedly sent. (*Id.*, Ex. B-8, 11/13/24 AAA Letter to Counsel.) MLBAM never received that invoice, and it told the AAA and Petitioners' counsel so. (*Id.*, Ex. B-9, 11/19/24 Littmann Letter to AAA.) MLBAM also informed the AAA that Petitioners' claims were not subject to arbitration based on the 2024 TOU, so Petitioners had not met their filing requirements and MLBAM was not obligated to pay. (*Id.*) MLBAM further requested that the AAA withdraw the purported October invoice and close the cases. (*Id.*) The AAA did not respond to this letter but closed the cases in December 2024. (*Id.*, Ex. B-10, 12/5/24 AAA Letter to Counsel.)

Four months after the AAA closed their cases, Petitioners filed this petition and motion to

compel arbitration. (*See* Pet.; Mot. to Compel Arbitration ("Mot."), ECF No. 4; Mem. of Law in Supp. of Pet'rs' Mot. to Compel Arbitration ("Mem."), ECF No. 5.) Petitioners claim that they are "5,629 MLB.TV subscribers" entitled to arbitrate their VPPA claims against MLBAM. (Pet. ¶ 1.) For support, Petitioners attach a copy of the 2020 TOU and thousands of declarations, which identically assert:

> (1) "I . . . am an MLB.com subscriber. I signed up for an MLB.com account by creating an account on MLB.com, purchasing an MLB.TV subscription or an MLB At Bat subscription, or logging into MLB.com using my TV provider or Amazon Prime information."
>
> (2) "This MLB.com account belongs to me and not to a third party. I viewed videos on the MLB.com website within the past two years."
>
> (3) "I would like to pursue my privacy claims through an arbitration administered by the [AAA] under section 11 of the applicable . . . Terms of Use Agreement . . . Last Updated: February 4, 2020."

(Pet., Ex. E, ECF Nos. 2-5 through 2-19.)

Neither Petitioners' motion nor their petition mentions the 2024 TOU at all. (*See generally* Pet., Mot., Mem.) And although using any MLBAM digital property after the 2024 TOU updated on February 6, 2024, would confirm assent to the new TOU, Petitioners' declarations do not disclaim continued use. (*See* Pet., Ex. E, ECF Nos. 2-5 through 2-19.)

## III.  MLBAM's investigation confirms that nearly all Petitioners continued to use MLBAM's digital properties after the 2024 TOU took effect.

MLBAM has searched its records and uncovered extensive information confirming that over 90% of Petitioners continued to use MLBAM's digital properties after MLBAM provided notice to all registered users, and in doing so, assented to the 2024 TOU. MLBAM's digital

properties use "OktaIDs," a tool that implements the unique preferences and settings of users with MLB.com accounts. (Frost Decl. ¶ 37.) Any user who creates an MLB.com account—by signing up on MLB.com, subscribing to MLB.TV, purchasing a ticket to an MLB game, or taking other actions on an MLBAM digital property—automatically receives a unique OktaID tied to that account. (*Id.*) MLBAM has investigated its records for OktaIDs associated with the email addresses Petitioners provided. (*Id.*) MLBAM found that:

- Petitioners submitted declarations from 5,628 individuals, rather than the claimed 5,630. (*See* Pet., Ex. A, ECF No. 2-1.)

- 5,120 Petitioners have used at least one MLBAM digital property since February 6, 2024:

    o 4,928 Petitioners accessed an MLBAM website, mobile app, or MLB.TV;

    o 3,595 Petitioners signed up for or renewed their MLB.TV subscriptions;.

    o 34 Petitioners used a digital property to purchase tickets;

    o And over 100 Petitioners interacted with an MLBAM email or website form.

- 363 Petitioners have no OktaID and thus no recorded MLB.com account.

- 145 Petitioners have MLB.com accounts, but the evidence is inconclusive on their use of MLBAM's digital properties since February 6, 2024.

(Frost Decl. ¶¶ 37–40.) MLBAM's investigation also revealed that 655 Petitioners—including Moore—are arbitrating or have arbitrated their VPPA claims against MLBAM through other counsel. (*Id.* ¶ 41; Littmann Decl. ¶ 3, Ex. B-1, Arbitrating Petitioners.) These claims were all filed by January 2024—before the 2024 TOU took effect. (Littmann Decl. ¶ 3.)

### IV.  No matter which TOU governs, New York law applies, and Petitioners may not bring a consolidated action.

Regardless of which TOU applies, New York law governs. The 2020 TOU contains a

choice-of-law clause selecting New York law. (*See* 2020 TOU § 12 ("Any and all Claims . . . shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York").) The 2024 TOU contains a substantively identical clause. (*See* 2024 TOU § 12.)

Petitioners also waived their right to participate in a consolidated proceeding under either TOU. The 2020 TOU provides: "Any and all claims shall be arbitrated on an individual basis only and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party." (2020 TOU § 11(4).) The 2024 TOU similarly states: "You and MLB agree that any proceeding, whether in arbitration or in litigation, will be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action." (2024 TOU § 11.)

## ARGUMENT

Petitioners improperly move to compel arbitration en masse without the necessary individual evidence, without acknowledging that some Petitioners are already arbitrating or have arbitrated, and without ever acknowledging the 2024 TOU or its requirements to file individual actions in court. Their petition is procedurally improper and should be severed. And even if Petitioners filed this case properly, their template-style declarations do not come close to meeting their burden to individually show an agreement to arbitrate. And MLBAM's evidence further confirms the motion should be denied: Nearly all Petitioners agreed to a TOU barring their arbitration claims, and there is a genuine dispute as to the few for whom MLBAM lacks conclusive records. Accordingly, the Court should deny Petitioners' motion to compel arbitration and their request for fees.

## I.    Petitioners' claims are improperly joined and should be severed.

The need for individualized evidence to support Petitioners' motion to compel arbitration shows why their claims should be severed as an initial, procedural matter. Petitioners' 5,628

individual claims are not properly joined under either the Federal Rules of Civil Procedure or the anti-consolidation provisions in both the 2020 and 2024 TOUs.

**Rule 20**. Rule 20 allows for the joinder of claims that "arise out of the same transaction or occurrence or series of transactions or occurrences, and . . . some question of law or fact common to all parties will arise in the litigation." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986); Fed. R. Civ. P. 20(a). Petitioners' claims are not properly joined under Rule 20 for the following reasons.

***First***, Petitioners' arbitration claims do not arise from the same transaction or series of transactions: They instead arise from each Petitioner's individual relationship with MLBAM based on their unique MLB.com accounts and activities on MLBAM's digital properties. The merits, and outcomes, of each Petitioner's request for arbitration depend on the TOU to which that Petitioner agreed. Under the 2020 TOU, VPPA and related privacy claims belonged in arbitration. (2020 TOU § 11.) But under the 2024 TOU, these claims belong in court. (2024 TOU § 11.) Which TOU applies to a Petitioner depends on many individual questions, including: (1) whether that Petitioner agreed to MLBAM's TOU at all; (2) whether that Petitioner filed claims in arbitration before the 2024 TOU change; (3) if the Petitioner did agree to MLBAM's TOU, whether that agreement was before or after the 2024 TOU change; and (4) if before, whether the Petitioner continued to use MLBAM's digital properties after the change and thus agreed to the 2024 TOU. (*See infra* at 20–22.) So each Petitioner's purported right to relief against MLBAM arises out of entirely separate events. Courts have found claims improperly joined under similar circumstances. *See, e.g.*, *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (severing claims by 16 plaintiffs who entered 15 distinct loan transactions).

11

***Second***, Petitioners' claims for arbitration involve unique questions of law and fact. Courts applying Rule 20 have found that "the overlap in questions or law of fact must be 'substantial' in order for joinder to be appropriate." *Nolan v. Int'l Bus. Machs. Corp.*, No. 24-CV-04653 (PMH), 2025 WL 1078392, at *2 (S.D.N.Y. Apr. 10, 2025) (cleaned up). Here, Petitioners' arbitration claims do not have substantial overlap. Rather, each Petitioner's arbitration claim requires an individualized inquiry into whether the Petitioner had an MLB.com account and whether the Petitioner assented to the new TOU based on continued use of MLBAM digital properties. (*See infra* at 15–23.) Nor can any Petitioner rely on evidence about any other Petitioner to carry their burden of establishing an arbitration agreement: They must provide individualized evidence on the questions above. (*See infra* at 14–19.) This means the Petitioners' factual questions do not substantially overlap, *see Nolan*, 2025 WL 1078392, at *2, and the Court should sever Petitioners' arbitration claims under Rule 20 as improperly joined.

**Rule 21**. Even if the Court finds that Petitioners' claims for arbitration are properly joined under Rule 20, it should still sever them under Federal Rule of Civil Procedure 21. "Courts have the authority to deny joinder, or to order severance under Rule 21 . . . even without a finding that joinder is improper, if joinder will not foster the objectives of the rule, but will result in prejudice, expense or delay." *Syville v. N. Y. C. of N. Y.*, No. 20CV570LTSSDA, 2020 WL 2508788, at *2 (S.D.N.Y. May 15, 2020) (cleaned up). Thus, courts may grant a motion to sever based on: (1) judicial economy; (2) prejudice to the parties; and (3) the witnesses and evidence required to prove the claims. (*Id.*)

Here, severance will serve judicial economy because administering 5,628 individual requests to arbitrate in a consolidated fashion presents substantial logistical difficulties. The Court acknowledged this "impracticable" situation when Petitioners' counsel first filed this case and

spent several days attempting to add every single Petitioner to the case caption. *Moore v. MLB Advanced Media, L.P.*, No. 1:25-cv-02880-AT (S.D.N.Y. Apr. 14, 2025), ECF No. 7. In another case involving hundreds of individual consumers, *Corley v. Google, Inc.*, the court severed the claims because administration of several hundred claims, including determining whether each individual plaintiff engaged in relevant activity on the defendant's digital platform, "would be impractical," "impede effective case management, and would not promote judicial economy." 316 F.R.D. 277, 290 (N.D. Cal. 2016). In this district, courts have found groups far smaller than 5,628 parties too numerous for joinder to be practical. *See, e.g.*, *In re MBTE Prods. Liab. Litig.*, 241 F.R.D. 185, 196–97 (S.D.N.Y. 2007) (finding 350 plaintiffs too numerous for joinder to be practical); *Syville*, 2020 WL 2508788, at *3 (severing claims of eight plaintiffs due to logistical difficulties).

MLBAM will also be prejudiced if these claims for arbitration are not severed because any trials on arbitrability will involve distinct witnesses and evidence, leading to jury confusion. "[S]everal courts have found substantial prejudice where a 'defendant's defense would, in effect, require hundreds of mini-trials.'" *Corley*, 316 F.R.D. at 289 (cleaned up). This would be the case here. MLBAM's defense at any trials would be that individual Petitioners did not agree to arbitrate with MLBAM based on their account history and activity records—i.e., distinct evidence. And each Petitioner would be called to testify about his own history—i.e., distinct witnesses. "A joint trial 'could lead to confusion of the jury'" because Petitioners' arbitration claims will involve separate witnesses and evidence, which "could lead to guilt by association and spillover prejudice" against MLBAM. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (cleaned up). To avoid burdening the Court and prejudicing MLBAM, these arbitration claims should be severed.

**Either TOU prohibits joining these arbitration claims**. Petitioners' arbitration claims should also be severed because, under either TOU, Petitioners waived their right to participate in any "class, collective, [or] consolidated" action. (2024 TOU § 11; *see also* 2020 TOU § 11; *see infra* at 20–22 (describing assent to TOU at signup or by continued use).) And "[c]ourts applying New York law . . . have uniformly held that" waivers like these are enforceable. *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009). Thus, any Petitioner who assented to either TOU agreed to an enforceable consolidated-action waiver barring joinder here.

## II.    The Court should deny Petitioners' motion to compel arbitration.

After severing Petitioners' arbitration claims, the Court should deny Moore's motion to compel as moot and direct Petitioners to individually refile their requests to arbitrate. Alternatively, the Court should deny the motion as to all Petitioners.

Motions to compel arbitration "are governed by a standard similar to that applicable for a motion to summary judgment." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49 (2d Cir. 2022) (cleaned up). "[T]he court considers all relevant, admissible evidence submitted by the parties . . . and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up).

Because "[a]rbitration is strictly a matter of consent," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (cleaned up), "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Thus, the Court "must first determine whether an agreement to arbitrate exists between the parties," *Zachman v. Hudson Valley Fed. Cred. Union*, 49 F.4th 95, 101 (2d Cir. 2022), which is "a question of state contract law," *Schnable v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). "The part[ies] seeking to compel arbitration"—here, Petitioners—"bear[] an initial burden of demonstrating that an agreement to

14

arbitrate was made." *Zachman*, 49 F.4th at 101–02. If Petitioners fail to "make a prima facie initial showing that an agreement to arbitrate exist[s]," the motion should be denied. *See Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010). Only if Petitioners meet their burden does the burden shift to MLBAM "to show the agreement to be inapplicable." *See Zachman*, 49 F.4th at 102 (cleaned up).

Here, the motion should be denied as moot as to 655 Petitioners because they are already arbitrating their VPPA claims. And the remaining Petitioners have failed to meet their burden of establishing the existence of an agreement to arbitrate. Even if the burden shifts, MLBAM's evidence shows that the motion should be denied. If the Court does not deny the remaining Petitioners' motion outright for failure to meet their burden, it should deny their motion without prejudice and order limited discovery.

### A.     The motion of 655 Petitioners, including Moore's, should be denied as moot.

Six hundred fifty-five Petitioners, including Moore, are arbitrating or have arbitrated their VPPA claims against MLBAM. Accordingly, their requests to arbitrate should be denied as moot. A motion is moot if the movant has already received the relief requested. *See, e.g.*, *Fin. Guar. Ins. Co. v. The Putnam Advisory Co., LLC*, 314 F.R.D. 85, 88 (S.D.N.Y. Mar. 15, 2016) (motion to compel discovery moot where non-movant agreed to discovery). This is the case here: 655 Petitioners, including Moore, already received their requested relief—arbitrating VPPA claims against MLBAM. (Littmann Decl. ¶ 3.) These Petitioners, who are represented by other counsel in those arbitrations, all filed their arbitration claims in either 2023 or early 2024, before the 2024 TOU took effect. (*Id.*) Because they are engaging in the arbitration they seek, as to this group, "the issues presented" in the motion "are no longer 'live.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (discussing when a "case becomes moot") (citations omitted). Thus, the Court should deny

these Petitioners' motion to compel as moot, and MLBAM will seek fees for its defense as to these Petitioners. (*See infra* at note 4.)

**B.    The remaining Petitioners have failed to meet their burden of establishing an agreement to arbitrate.**

The remaining Petitioners' declarations do not meet their burden of showing an agreement to arbitrate with MLBAM. Under the summary-judgment standards that apply here, supporting declarations must  "set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (cleaned up). So Petitioners "must further set forth specific ***facts*** in the[ir] affidavits" rather than "conclusory" assertions, "speculation or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. Aug. 16, 1996) (emphasis added and citations omitted). Petitioners fail to meet these standards.

***First***, Petitioners' declarations are legally insufficient to show they reached any agreement with MLBAM. Petitioners identically assert: "I signed up for an MLB.com account by creating an account on MLB.com, purchasing an MLB.TV subscription or an MLB At Bat subscription, or logging into MLB.com using my TV provider or Amazon Prime information." (*See, e.g.*, Pet., Ex. E, ECF Nos. 2-5 through 2-19.) This statement reflects no personal knowledge of the affiant's purported signup with MLBAM; it simply lists ways that someone ***could*** sign up with MLBAM. And some of those ways are implausible. For example, MLBAM does not provide a method to sign up for an MLB.com account using a "television provider or Amazon Prime information." (*See* Frost Decl. ¶ 7.)

Courts applying New York law, which Petitioners do not dispute applies here,[3] have found

---

[3] "[A] party may concede the applicability of one state's law through exclusive citations to decisions applying that law in briefing," particularly where that party does not reserve the right to

similar submissions insufficient to show that the parties reached an agreement. For example, in *Amica Mutual Ins. Co. v. Kingston Oil Supply Corp.*, the court found that an affidavit providing no concrete details about ***how*** the parties assented to a contract was insufficient to show a contract existed. 134 A.D. 3d 750, 753 (App. Div. 2015). Likewise, Petitioners' declarations list ways a generic person could create an MLB.com account, but lack any facts about how they each, individually, reached an agreement with MLBAM. The declarations therefore fail to "establish that a binding agreement was made" under New York law. *Kramer v. Greene*, 36 N.Y.S. 3d 448, 450 (App. Div. 2016).

**Second**, besides not showing how they reached an agreement with MLBAM, Petitioners' declarations include no facts linking their arbitration claims to a specific agreement. Instead, each declaration asserts that the Petitioner has an MLB.com account, and then states that they would "like to" arbitrate under the 2020 TOU. (*See supra* at 8–9.) But no declaration says that Petitioners ever agreed to the 2020 TOU. Courts deny motions to compel arbitration in similar circumstances. For example, in *Mayfield v. Asta*, the court found insufficient a "general[]" declaration that lacked specific facts about "any [petitioner's] alleged status as an account holder," to which the petitioner attached unsigned "sample contracts" supposedly resembling the parties' contract. 95 F. Supp. 3d 685, 694 (S.D.N.Y. 2015). In short, the court denied the petitioner's motion because the generic declaration and generic agreement he provided did not establish the existence of a contract. *See id.* In a consumer mass-arbitration case from a different circuit, *Wallrich v. Samsung Elects. Am., Inc.*, the petitioners' submissions—"a generic arbitration agreement" and a list of "names and addresses"—were insufficient because they did nothing "to link [petitioners] to the agreement"

---

invoke another state's law. *Pilon v. Discovery Comms., LLC*, -- F. Supp. 3d --, 2025 WL 752244, at *5 (S.D.N.Y. 2025).

they supplied. 106 F.4th 609, 619 (7th Cir. 2024). The petitioners needed to provide individualized evidence of their interaction with the respondent's product, like "receipts, order numbers, or confirmation numbers," or declarations attesting to specific purchases. (*Id.*) Without this evidence linking them to a particular agreement, the petitioners could not show the "existence of an arbitration agreement." (*Id.*)

The facts missing from Petitioners' declarations are even more critical than those missing in *Mayfield* and *Wallrich* because Petitioners' evidence fails to show not just whether they entered **an** agreement, but also, if they did, **which** agreement. This question directly bears on arbitrability because VPPA and related privacy claims belonged in arbitration under the 2020 TOU (§ 11), but these same claims belong in court under the 2024 TOU (§ 11). Yet Petitioners' declarations provide no individual facts about when and how each Petitioner signed up, or whether they continued using MLBAM digital properties after the 2024 TOU took effect, which would constitute assent to the 2024 TOU. (*See infra* at 20–22.) Without these facts, Petitioners cannot meet their burden.

In cases (cited by Petitioners) where courts found sufficient evidence of assent, the petitioners provided much more robust offerings. In *Abernathy v. DoorDash, Inc.*, another consumer mass-arbitration case, most petitioners "attest[ed] to 'clicking through' DoorDash's AAA arbitration agreement," when they "sign[ed] in for new work" on DoorDash. 438 F. Supp. 3d 1062, 1064–65 (N.D. Cal. 2020). These declarations were sufficient because they showed "the identifying information [petitioners] used to register with DoorDash and at least referenc[ed] in an ascertainable way the specific arbitration [agreement petitioners] clicked through." (*Id.* at 1065 (cleaned up).) Petitioners' statements here, however, are much more like other, rejected statements in *DoorDash*, which omitted details about the petitioners' signup processes and thus lacked information from which to "conclude that an arbitration [agreement] exists." (*Id.*) And in *Yorke v.*

*TSE Group, LLC*, the petitioner "submit[ed] a signed agreement containing an arbitration clause." No. 18-CV-5268 (JMF), 2019 WL 3219384, at *1 (S.D.N.Y. July 17, 2019). Petitioners have not done this either.

In sum, Petitioners' generic declarations fail to meet their initial burden of showing an arbitration agreement exists between MLBAM and each Petitioner. The Court should therefore deny Petitioners' motion to compel arbitration.

**C.    MLBAM's evidence confirms that Petitioners' motion should be denied.**

Even if Petitioners had met their initial burden of establishing the existence of an arbitration agreement, which they have not, MLBAM's evidence shows that their motion should be denied.

**1.    MLBAM's evidence shows that 363 Petitioners have no agreement.**

MLBAM's evidence shows that 363 Petitioners have not entered any agreement with MLBAM. "[U]nder New York law, unsurprisingly, parties that have not agreed to arbitrate claims may not be forced to do so." *Barrows*, 36 F.4th at 50. MLBAM's OktaID system identifies users who have MLB.com accounts; if there is not an OktaID associated with a particular email address, then they do not have an MLB.com account. (Frost Decl. ¶¶ 37, 40.) Without an account, there is no evidence that these Petitioners have any agreement with MLBAM. The Petitioners' barebones affidavits asserting that they have MLB.com accounts does not alter this conclusion, because a party's declaration does not create a factual dispute if it contains only "conclusory" assertions or "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Middleton v. T-Mobile U.S., Inc.*, No. 20-CV-3276 (NGG) (JRC), 2022 WL 16828226, at *5 (E.D.N.Y. Aug. 24, 2022) (cleaned up). This is the case here, where MLBAM's evidence contradicts Petitioners' general statements. Because there is no evidence these 363 Petitioners entered an arbitration agreement with MLBAM, their motion should be denied.

**2.    MLBAM's evidence establishes that 5,120 Petitioners agreed to bring**

**VPPA claims in court, not arbitration.**

Alternatively, even if the burden shifts to MLBAM to rebut Petitioners' evidence, which it should not because Petitioners have failed to make their initial showing, MLBAM's evidence does just that: It establishes that 5,120 Petitioners have entered an agreement with MLBAM to bring VPPA claims in court, not in arbitration.

Under New York law, over 90% of Petitioners have assented to the 2024 TOU based on their use of MLBAM's digital properties. As Petitioners note, "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." (Mem. at 9–10 (quoting *Meyer*, 868 F.3d at 75).) This means that any Petitioners who signed up for or logged into MLB.com after the 2024 TOU took effect signaled assent to the 2024 with their "click." *See Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 248–49 (S.D.N.Y. 2024) (enforcing online agreement). Further, "[c]ourts applying New York law consistently have held that 'customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.'" *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 51 (E.D.N.Y. 2017) (citations omitted).

When analyzing whether a user has assent to revised terms, courts look to whether an email or other notice provided users with "reasonably conspicuous notice" of the updated terms. *Pincaro v. Glassdoor, Inc.*, No. 16 CIV. 6870 (ER), 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017) (cleaned up). Here, MLBAM provided notice of the updated terms in multiple ways.

**First**, on February 6, 2024, MLBAM emailed all registered users a notice of updates to its Privacy Policy and TOU. (Frost Decl. ¶ 12.) This email explained that "[b]y continuing to use our services (including our websites and mobile applications) on or after February 6, 2024, you agree

to our updated Privacy Policy and Terms of Use Agreement." (*Id.*, Ex. A-4.) The email also included labeled hyperlinks, in blue font, to the Privacy Policy and TOU. (*Id.*)

***Second***, MLB.com displayed a website banner notifying users of the updates. (Frost Decl. ¶ 13.) Like the email notice, the banner explained, "***By continuing to use our services, you agree to the updated Privacy Policy and Terms of Use Agreement***." (*Id.* (emphases added).) The Privacy Policy and TOU were also hyperlinked with blue font. (*Id.*) A banner with a nearly identical message remains on MLB.com to this day. (*Id.* ¶ 14.)

Courts applying New York law regularly enforce contracts that users agreed to by continuing to use a product after receiving notice of a new TOU, like the notices that MLBAM gave here. For example, in *Pincaro*, the court found plaintiffs bound by updated terms after they received an email noting the updates and hyperlinking to the new terms using blue font. 2017 WL 4046317, at *6. The court explained "that Plaintiffs are deemed to have assented to these Terms of Use by their continued use of [Defendant's] website, as opposed to requiring some further, affirmative step, does not render these updated terms inapplicable." (*Id.*) And in *Peng*, the court concluded that Uber drivers agreed to an updated TOU after they received notice of the TOU—including through a pop-up like MLBAM's banner—and continued "to use their accounts after receiving the revised terms." 237 F. Supp. 3d at 51 (cleaned up). Likewise, MLBAM's evidence confirms that 5,120 Petitioners continued using MLBAM's digital properties after MLBAM gave notice of the updated TOU. (Frost Decl. ¶ 40(c).)

New York law also requires claims that existed before the adoption of a new agreement to be brought according to the new agreement's terms. In *Wu v. Uber Techs., Inc.*, the New York Court of Appeals enforced an updated agreement against a plaintiff with claims that arose before the agreement was adopted. -- N.E.3d --, 2024 WL 4874383, at *8–10 (N.Y. 2024). Like MLBAM,

Uber provided an email notice "written in plain language," along with a "pop-up screen" explaining that, by clicking through the pop-up to use the Uber app, the user confirmed agreement to the updated TOU. (*Id.* at *8.) The court concluded that, by clicking through, the plaintiff had agreed to the updated TOU, so her pending claims against Uber had to be brought in the forum set by the updated TOU. (*Id.* at *11.)

Here, like in *Wu*, the 5,120 Petitioners who continued using MLBAM's digital properties after the 2024 TOU became effective, and had not initiated arbitration proceedings before February 6, 2024, are bound by that TOU's forum provision, even if their claims arose before the effective date. These Petitioners' VPPA claims belong in court, so their requests should be denied.

### 3.  For the remaining 145 Petitioners, MLBAM's evidence creates at least a genuine dispute of fact.

As to the remaining 145 Petitioners, MLBAM's evidence creates a fact dispute on whether the parties entered an arbitration agreement. To create a genuine dispute of material fact on a motion to compel, MLBAM need only "counter with at least 'some evidence . . . to substantiate [its] denial' that an agreement had been made." *Barrows*, 36 F.4th at 50 (quotations omitted). And if "there is a genuine issue of fact as to the making of the agreement for arbitration, then . . . a trial is necessary." *Smith v. RPA Energy, Inc.*, 732 F. Supp. 3d 278, 284 (S.D.N.Y. 2024) (cleaned up).

There is a genuine dispute of fact about the 145 Petitioners for whom MLBAM lacks records of recent use. According to MLBAM's records, these Petitioners have MLB.com accounts. (Frost Decl. ¶ 40(d).) As account holders, they received notice of the updates to MLBAM's TOU by email. (*Id.* at ¶ 12.) But MLBAM's records do not conclusively show that these individuals continued using MLBAM's digital properties after MLBAM sent this notice, because MLBAM's records do not capture activity by users who are not logged into their accounts. (*Id.* at ¶ 37.) These Petitioners could have been using MLBAM's digital properties while not logged in, thus agreeing

to the 2024 TOU, but MLBAM would have no way of knowing. (*Id.* at ¶¶ 37, 40(d)) Petitioners could have provided such evidence, but their declarations are silent on this issue. (*See* Pet., Ex. E, ECF Nos. 2-5 through 2-19.) This means there is a fact dispute about whether these Petitioners agreed to the 2024 TOU by continuing to use MLBAM's digital properties after February 6, 2024, while not logged in.

Courts have found that similar circumstances created a genuine issue of fact. In *Brooks*, the court concluded that "use of the [respondent's] platform by [p]etitioners" while not logged in "could plausibly constitute acceptance of" the respondent's updated TOU. *Brooks v. WarnerMedia Dir., LLC*, No. 23 Civ. 11030 (KPF), 2024 WL 3330305, at *13 (S.D.N.Y. July 8, 2024). This created a question of fact, which prevented granting the motion to compel arbitration. (*See id.* at *13 (ordering discovery); *Khowala v. Vivint Smart Home, Inc.*, No. 23 Civ. 1068 (AT), 2024 WL 3638265, at *5 (S.D.N.Y. Aug. 1, 2024) (denying motion to compel without prejudice and ordering limited discovery).) The same is true here.

Because there is a fact dispute about which TOU these 145 Petitioners assented to, if it does not deny their motion outright for failure to meet their burden, the Court should authorize limited discovery on this issue. Courts regularly authorize "targeted discovery" to determine if the parties entered an arbitration agreement, or, when there are competing agreements, which one controls. *See Brooks*, 2024 WL 3330305, at *19; *Khowala*, 2024 WL 3638265, at *5. Here, the Court should order these 145 Petitioners to produce proof unique to each Petitioner, like an individually drafted—not template—declaration attesting to how and when that particular Petitioner agreed to MLBAM's TOU. The evidence should also specify whether each Petitioner continued using MLBAM digital properties, whether logged in or not, after February 6, 2024. Alternatively, the Court should authorize MLBAM to propound targeted written discovery

requests, such as a limited number of interrogatories, to each Petitioner to gather this information. This "limited, targeted discovery into Petitioners' assent," *Brooks*, 2024 WL 3330305, at *19, will confirm which TOU Petitioners agreed to and where their claims belong. The Court should thus deny these Petitioners' motion without prejudice and authorize discovery. *See Khowala*, 2024 WL 3638265, at *5 (denying motion to compel arbitration without prejudice and ordering discovery).

### D. MLBAM is not estopped from opposing Petitioners' motion to compel.

Petitioners incorrectly argue that MLBAM is estopped from opposing Petitioners' motion. "[J]udicial estoppel" is an equitable doctrine "designed 'to prevent improper use of judicial machinery.'" *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (citations omitted). "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (cleaned up). None of these factors is present here.

*First*, MLBAM's position on Petitioners' motion is not at all inconsistent—let alone "clearly inconsistent"—with its earlier positions about enforcing its TOU in the three federal-court cases Petitioners cite. The crucial difference is that these earlier cases involved old TOUs that required arbitrating most claims, while this case involves the new 2024 TOU that makes court the proper forum. The plaintiff in *Perry v. MLB Advanced Media, L.P.* agreed to arbitrate her consumer-fraud claims with MLBAM in 2016 under an old TOU. *See* No. CV 18-1548 PSG (GJSx), 2018 WL 5861307, at *1–3 (C.D. Cal. May 30, 2018) (describing purchase of MLB product in 2016 and application of TOU with arbitration clause). The plaintiff in *Hayes v. Major League Baseball Advanced Media, L.P.* agreed to arbitrate his VPPA claim against MLBAM under the 2020 TOU that applied in 2022. *See* No. 1:22-CV-05822 (N.D. Ill.), ECF No. 21, at 3–4, 6–10

(applying 2020 TOU based on plaintiff's online activity). And the plaintiff in *Carroll v. MLB Advanced Media L.P.* did not allege having an account with MLBAM, but MLBAM noted that, if she had, she would have been subject to the operative 2020 TOU. No. 2:23-CV-01216 (C.D. Cal. Feb. 24, 2023), ECF No. 21, at 2 n.2. In *Perry*, *Hayes*, and *Carroll*, and here, MLBAM acted consistently by seeking to enforce the relevant TOU.

**Second**, estoppel requires the court in an earlier case to have adopted the argument (*see supra* at 24), and two of the cases on which Petitioners rely did not adopt any argument at all: Both *Hayes* and *Carroll* resulted in voluntary dismissals. *See Hayes*, ECF. No 25, Min. Entry (entering notice of voluntary dismissal); *Carroll*, ECF No. 25 (notice of voluntary dismissal). And the ruling in *Perry* is irrelevant because it involved MLBAM's TOU that applied in 2016—not the 2020 TOU that Petitioners say applies here.

**Third**, MLBAM derives no unfair advantage from its arguments here. Petitioners incorrectly assert that MLBAM has an unfair advantage here because it pulled a "bait-and-switch" by leading them to believe that their claims belonged in arbitration, then refusing to arbitrate. It has not. Instead, MLBAM has repeatedly advised Petitioners that their claims belong in court, not in arbitration, based on the 2024 TOU. (Littmann Decl. ¶ 9; *id.*, Ex. B-7.) And MLBAM provided notice to all MLB.com account-holders of the updated TOU by email and it posted a banner on MLB.com that gave notice of the updated terms. (*See* Frost Decl. ¶¶ 12–13.) Where, as here, a party's position is made clear to an opponent, and is supported by the evidence, the opponent suffers no "discernible prejudice" and cannot invoke judicial estoppel. *DeRosa*, 595 F.3d at 105.

Estoppel does not apply here, and the Court should deny Petitioners' motion.

## III.  Petitioners are not entitled to fees.

The Court should reject Petitioners' argument that they are entitled to fees because they rely on an inapplicable and unenforceable California law, and because they have not shown an

arbitration agreement with MLBAM as required to recover fees.

**The California Arbitration Act does not apply**. The provision of the California Arbitration Act ("CAA") on which Petitioners rely does not entitle them to fees because it does not apply. Petitioners cite California Code of Civil Procedures Section 1281.97, a provision of the CAA authorizing fees against the drafter of an arbitration agreement who "materially breaches the arbitration agreement." Cal. Civ. P. Code § 1281.97. Courts determining the applicability of the CAA to arbitration agreements "'examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law.'" *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1121–22 (Cal. App. Ct. 2006) (quoting *Cronus Inv., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 383 (2005)). Courts decline to apply the CAA where the agreement "adopted the FAA—all of it—to govern their arbitration." (*Id.* at 1122.)

The Federal Arbitration Act ("FAA")—not the CAA—controls here. Petitioners explicitly invoke the FAA. (Pet. ¶¶ 43–48 (citing 9 U.S.C. § 4).) And they attach to their petition the 2020 TOU. (*Id.*, Ex. B, ECF No. 2-2.) The 2020 TOU's arbitration provision states that it "shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act." (2020 TOU § 11(1).) The 2024 TOU similarly provides that the FAA "and federal arbitration law (and not state arbitration law)" apply. (2024 TOU § 11(1).) Arbitration provisions like these that "plainly state[] 'this agreement is governed by the FAA,' . . . [are] broad, encompassing both the procedural and substantive provisions of the FAA," precluding application of the CAA. *Hernandez v. Sohnen Enters., Inc.*, 102 Cal. App. 5th 222, 241–42 (Cal. Ct. App. 2024) (declining to apply § 1281.97). Likewise, the TOU's choice-of-law clause calls for the application of New York substantive law—not California law. (*See* 2020 TOU § 12.) Thus, "[t]here is **no** other contract provision suggesting the parties intended to incorporate California arbitration law," and the CAA

does not apply. *Rodriguez*, 136 Cal. App. 4th at 1122 (emphasis in original).

      **The FAA preempts the CAA**. Even if § 1281.97 of the CAA could apply, it still would be unenforceable because the FAA preempts it. The FAA contains an "equal treatment principle" that proscribes "legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 755–56 (N.D. Cal. 2022) (quoting *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022)). Thus, the FAA preempts "rules 'too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers.'" *Belyea,* 637 F. Supp. 3d at 756 (quoting *Kindred Nursing Ctrs. L.P. v. Clark*, 581 U.S. 246, 252 (2017)). Courts routinely hold that § 1281.97 "violates the equal-treatment principle," and thus is preempted by the FAA, "because it makes arbitration provisions unenforceable on arbitration-specific grounds." *Belyea,* 637 F. Supp. 3d at 756; *see also Hernandez,* 102 Cal. App. 5th at 243 (agreeing with *Belyea* and holding § 1281.97 preempted); *Russell v. Siemens Indus. Software Inc.*, No. 23-cv-03884-LJC, 2024 WL 4545970, at *8–9 (N.D. Cal. Oct. 21, 2024) (holding related section preempted and collecting cases).

      The cases Petitioners cite to argue that § 1281.97 is not preempted and should apply in this case are inapt. For one thing, California law ***did*** apply in those cases (or there was no argument to the contrary), but it ***does not*** apply here. *See De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 746 (Cal. App. Ct. 2022) (agreement incorporated "the laws of the state of California"); *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2021 WL 540155, at *5 (C.D. Cal. Jan. 19, 2021) (cross-petitioners argued that provision violated California constitution and did not contest application of California substantive law); *Nygeres v. Pacific Sunwear of Cal., LLC*, No. SACV 21-01123-CJC (DFMx), 2022 WL 20717551, at *2–3 (C.D. Cal. July 6, 2022) (assuming California law applied); *Doe v. Law. for Emp. and Consumer Rts., APC*, No. B330052, 2024 WL

1203776 (Cal. Ct. App. Mar. 21, 2024) (unpublished and non-citable case containing no argument that California law did not apply). Here, New York substantive law and the FAA apply. (*See supra* at 9–10, 16–17.) Plus, Petitioners' cases either predate or fail to address both *Belyea* and its progeny as well as the Supreme Court's decision in *Viking River Cruises*, which provided "more recent guidance" on the equal-treatment principle. *Lee v. Citigroup Corp. Hldgs., Inc.*, No. 22-cv-02718-SK, 2023 WL 6132959, at *2 (N.D. Cal. Aug. 29, 2023) (agreeing with *Belyea* and holding § 1281.97 preempted under the equal-treatment principle based on *Viking River Cruises*).

**Petitioners' argument fails on the merits**. Even if the CAA could apply, Petitioners' argument for fees still fails. Section 1281.97 allows a party to seek fees only if "the drafting party materially breaches the arbitration agreement." Cal. Civ. P. § 1281.97(b). Here, Petitioners have not shown that they had an agreement to arbitrate with MLBAM (*see supra* at 14–25), so they necessarily cannot show that MLBAM has breached that agreement. Thus, Petitioners are not entitled to fees. *See, e.g.*, *Anoke v. Twitter, Inc.*, 105 Cal. App. 5th 153, 160–61 (Cal. Ct. App. Aug. 27, 2024) (finding no breach and affirming denial of plaintiff's claim for fees).[4]

## CONCLUSION

The Court should sever Petitioners' improperly joined arbitration claims and deny Moore's motion to compel. Alternatively, all Petitioners' motion to compel should be denied as moot or because they have not met their burden of showing an agreement to arbitrate, and their request for fees should also be denied.

---

[4] As MLBAM informed Petitioners' counsel (*see* Littmann Decl., Ex. B-7), MLBAM reserves the right to assert a claim for fees against Petitioners, as authorized by the 2024 TOU (*see* 2024 TOU § 11(4) (party entitled to attorneys' fees for enforcing forum-selection provision)), and New York law, *see, e.g.*, *SA Luxury Expeditions, LLC v. Schleien*, 2023 WL 8072914, at *1 (S.D.N.Y. Nov. 1, 2023) (awarding attorneys' fees authorized by agreement).

Dated: May 9, 2025

Respectfully submitted,

By: *S/ Alan E. Littmann*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Respondent*
*MLB Advanced Media, L.P.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 9, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Alan E. Littmann*
Alan E. Littmann

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing document complies with this Court's word count requirements and contains 8,624 words. Pursuant to Local Rule 7.1(c), this is exclusive of the caption, table of contents, table of authorities, signature block, and required certificates.

*S/ Alan E. Littmann*
Alan E. Littmann