**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IAN MOORE, AND 5,629 OTHER INDIVIDUALS**, | Case No. 1:25-cv-03121-AT |
| Petitioners, | |
| v. | |
| **MLB ADVANCED MEDIA, L.P.** | |
| Respondent. | |

**PETITIONERS' REPLY MEMORANDUM IN FURTHER SUPPORT**
**OF THEIR MOTION TO COMPEL ARBITRATION AND**
**IN OPPOSITION TO RESPONDENT'S CROSS-MOTION**
**TO SEVER PETITIONERS' CLAIMS**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 2

    I.    Petitioners Have Established That The Operative Terms Apply To This Dispute, And All Other Issues Are Delegated To AAA Arbitrators ..................... 2

        1.    Petitioners Have Met Their Prima Facie Burden Of Establishing An Agreement To Arbitrate ......................................................................... 2

        2.    MLBAM's Quibbles With Petitioners' Declarations Are Insufficient To Create A Genuine Issue As To An Agreement To Arbitrate ...................... 4

    II.    MLBAM'S Reliance On Its Purported Updated Terms Is Unavailing .................. 5

        3.    MLBAM's Attempted Amendment Is Ineffective ...................................... 5

        4.    MLBAM's Contention That The Updated Terms Apply To These Disputes, Along With Its Other Issues, Can Be Addressed To The Process Arbitrator ...................................................................................... 9

    III.    MLBAM's Remaining Arguments, Even If Not Delegated To Arbitrators, Are Meritless ................................................................................................ 11

        1.    MLBAM's Arguments Regarding Purportedly Dually Represented Clients, An Issue It Raised For The First Time In Its Opposition, Is Irrelevant .................................................................................................. 11

        2.    Petitioners Residing In California Are Entitled To The Protections Of The California Arbitration Act .................................................................. 13

    IV.    MLBAM'S Procedurally Improper "Cross-Motion" To Sever This Action Into Thousands Of Individual Actions Should Be Denied .......................................... 15

CONCLUSION .......................................................................................... 16

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acorin v. Experian Info. Sols., Inc.*,
    No.: No. 24-cv-00036-AJB-BLM, 2024 U.S. Dist. LEXIS 221426 (S.D. Cal.
    Dec. 6, 2024)................................................................................................................4

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)...................................................................................................14

*Cobb v. Ironwood Country Club*,
    233 Cal. App. 4th 960 (Cal. Ct. App. 2015) ............................................................7

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005).......................................................................................9

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    990 F.3d 173 (2d Cir. 2021).......................................................................................2

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004) ..............................................................................8

*DBT Gmbh v. J.L. Min. Co.*,
    544 F. Supp. 2d 364 (S.D.N.Y. 2008).......................................................................6

*De Leon v. Juanita's Foods*,
    85 Cal. App. 5th 740 (Cal. Ct. App. 2022) .............................................................14

*Dekker v. Vivint Solar, Inc.*,
    479 F. Supp. 3d 834 (N.D. Cal. 2020), *rev'd on other grounds*, No. 20-16584,
    2021 WL 4958856 (9th Cir. Oct. 26, 2021)............................................................14

*Doe v. Laws. For Emp. & Consumer Rts.*,
    No. 2D CIV B330052, 2024 WL 1203776 (Cal. Ct. App. Mar. 21, 2024) .............13

*Golland et al. v. Major League Baseball Advanced Media, L.P.*,
    2024-cv-06270 .........................................................................................................12

*Heckman v. Live Nation Ent., Inc.*,
    120 F.4th 670 (9th Cir. 2024) ....................................................................................8

*Henry v. Major League Baseball Advanced Media, L.P.*,
    24-cv-01446 .............................................................................................................12

*Klein v. ATP Flight Sch., LLP*,
    No. 14-CV-1522, 2014 U.S. Dist. LEXIS 91102 (E.D.N.Y. July 3, 2014).............12

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014) ............................................................................2

*Nyerges v. Pac. Sunwear of Cal., LLC*,
   No. 21-CV-01123-CJC-DFM-X, 2022 WL 20717551 (C.D. Cal. July 6, 2022) ...................13

*Peleg v. Neiman Marcus Grp., Inc.*,
   204 Cal App. 4th 1425 (Cal. Ct. App. 2012) ..........................................................7

*Postmates Inc. v. 10,356 Individuals*,
   No. 20-cv-02783, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021).....................................14

*Tinder v. Pinkerton Sec.*,
   305 F.3d 728 (7th Cir. 2002) ...........................................................................4

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
   487 F.3d 89 (2d Cir. 2007)..............................................................................6

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*,
   717 F.3d 322 (2d Cir. 2013)............................................................................2

*Wu v. Uber Techs., Inc.*,
   No. 90, 2024 WL 4874383 (N.Y. Nov. 25, 2024) ...................................................8

**Statutes**

9 U.S.C. § 4............................................................................................2

Cal. Code Civ. Proc. §1281.97 ....................................................................13, 14

California Arbitration Act ............................................................................13

Federal Arbitration Act ..............................................................................2

**Other Authorities**

Fed. R. Evid. 201(b)(2) ..............................................................................12

Rule 14(a).............................................................................................3

Rule MA-1 ...........................................................................................10

Rule MA-6 ...........................................................................................10

Rule MA-6(g).........................................................................................10

Rules MA-6(c), MA-6(d)(i) ..........................................................................10

# INTRODUCTION[1]

Rather than honor its agreement to arbitrate with its customers, MLBAM[2] has filed a scattershot, self-contradictory opposition to their motion, all to avoid approximately $8,000 in filing fees. MLBAM's arguments bypass the only proper issues for this court – the existence of a valid agreement to arbitrate, and the scope of issues delegated to the arbitrator – and attempt to prematurely litigate issues that must be resolved by an arbitrator in the first instance. This Court should refer these arguments to an AAA Process Arbitrator pursuant to the parties' agreement and allow the contractual arbitral process to play out.

Beneath MLBAM's obfuscation are simple facts that MLBAM cannot credibly deny. First, each Petitioner has asserted that he or she agreed to arbitrate disputes with MLBAM in a sworn statement. Second, AAA accepted administration of Petitioners' disputes with MLBAM – including the dispute over whether MLBAM's amended terms apply to Petitioners. Finally, the *only* reason that AAA has not begun adjudicating those disputes is that MLBAM has refused to pay an $8,125 initiation fee pursuant to AAA rules.

These three facts control the outcome of this motion. Petitioners have demonstrated their agreement to arbitrate with MLBAM under the terms in place when their claims accrued. AAA has determined that agreement covers the active disputes between Petitioners and MLBAM, including AAA's alleged amendment defense. MLBAM has refused to arbitrate by refusing to

---

[1] Because Respondent filed a brief purporting to be both an opposition to Petitioners' Motion to Compel Arbitration and an (improperly noticed) cross-motion to sever Petitioners' cases, this reply brief combines Petitioners' reply in further support of their Motion to Compel Arbitration with their opposition to Respondents' purported cross-motion. As such, Petitioners have conformed this briefing to the word limitations for an opposition brief pursuant to the Court's individual practices.

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in Petitioners' opening Memorandum of Law in support of this motion.

pay its fees.  All that remains is for this Court to order MLBAM to honor its agreement and pay

its nominal initiation fee, after which MLBAM's arguments and defenses can be raised in

arbitration, either before a Process Arbitrator or individual merits arbitrators.  No further inquiry

is permitted by the Federal Arbitration Act or necessary to decide this case.

## ARGUMENT

I.    **Petitioners Have Established That The Operative Terms Apply To This Dispute, And All Other Issues Are Delegated To AAA Arbitrators**

1.    **Petitioners Have Met Their Prima Facie Burden Of Establishing An Agreement To Arbitrate**

As set forth in Petitioners' opening briefing in support of this motion, the Court's task in

adjudicating a motion to compel arbitration under 9 U.S.C. § 4 is straightforward.  Once

Petitioners have established that "the parties agreed to arbitrate, and . . . [that] the scope of that

agreement encompasses the claims at issue," the Court should compel the parties to arbitration.

*Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (quoting *Holick v.

Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)).  However, the second question –

the scope of the arbitration agreement – may itself be for an arbitrator rather than the court "if the

parties clearly and unmistakably express[] their intention" to delegate questions of arbitrability to

the arbitrator.  *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*,

717 F.3d 322, 325 (2d Cir. 2013).

Where a district court finds that the parties have "clearly and unmistakably agreed to

arbitrate questions of arbitrability, the district court's work" is "done," and all remaining issues

in dispute are referred to the arbitrator.  *MatlinPatterson,* 717 F.3d  at 326.  Such clear and

unmistakable delegation is established when a "broad arbitration clause expressly commits all

disputes to arbitration," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d

Cir. 2014), or where the parties' agreement states that disputes are to be decided "in accordance

with . . . rules and procedures" of a particular arbitral body, where those rules and procedures delegate arbitrability disputes to the arbitrator.  The Operative Terms delegate arbitrability disputes to an arbitrator *in both of these ways.*

The Arbitration Provision in the Operative Terms provides that "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties . . . shall be settled by binding arbitration." *See* Petition ¶ 16, Exh. B at Section 11.1.  It further provides that such arbitrations shall proceed "before a single arbitrator appointed by [AAA] in accordance with its then governing rules and procedures . . . ." *Id.*  Those AAA rules and procedures empower AAA arbitrators to decide "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Petition ¶ 19, Exh. F at Rule 14(a).

Petitioners have each submitted a sworn declaration attesting that they created an MLBAM account – all but four of which, or 99.96%, were signed prior to the purported amendment date – and therefore agreed to arbitrate their VPPA claims under the Operative Terms.  Supplemental Declaration Of Jonathan D. Waisnor In Further Support Of Petitioners' Motion To Compel Arbitration And In Response To Respondent's Cross-Motion To Sever Petitioners' Claims ("Waisnor Supp. Decl.," filed concurrently herewith), ¶20; *see generally* Petition, Exh. E.  This is more than sufficient to establish the existence of an agreement to arbitrate that delegates arbitrability to the arbitrator.  Nothing more is required, and the Court's work should end with compelling MLBAM to arbitrate, where it will receive a full and fair opportunity to raise its remaining arguments.

2.      **MLBAM's Quibbles With Petitioners' Declarations Are Insufficient To Create A Genuine Issue As To An Agreement To Arbitrate**

MLBAM's attempt to refute the straightforward evidence presented through Petitioners' declarations is ineffective, primarily because MLBAM does not deny that most Petitioners are MLBAM customers, nor does it ever expressly deny that those customers signed up for its services prior to its purported February 6, 2024 amendment of its Terms of Use, which it claims became effective immediately. To the contrary, MLBAM has confirmed that its records include OktaIDs for all but 363 Petitioners. Frost Decl., ¶ 40(a). Nowhere does it affirmatively contend that any of the remaining approximately 93.6% of the Petitioners do not have an agreement to arbitrate with it, or that any of these approximately 5,266 individuals did not enter into that agreement prior to MLBAM's purported amendment.

The reason for this is obvious – had MLBAM searched its records for this information, it would confirm what is obvious on the face of Petitioners' declarations, i.e., that each of them "signed up for an MLB.com account," prior to MLBAM's purported amendment. However, "[j]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995); s*ee also, e.g., Acorin v. Experian Info. Sols., Inc.*, No.: No. 24-cv-00036-AJB-BLM, 2024 U.S. Dist. LEXIS 221426, at *12-14 (S.D. Cal. Dec. 6, 2024) (holding party affidavit that it signed an online agreement was sufficient to "demonstrate the absence of a genuine issue of material fact" as to existence of arbitration agreement, where party resisting arbitration offered nothing other than a general denial) (citing *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (citation omitted). If MLBAM had any evidence to the

contrary, it was MLBAM's burden to present it, and its failure to do so for any Petitioners other than the 363 it claims have "no OktaID" speaks volumes.  And as to those 363 individuals, all MLBAM has done is expose a potential issue of disputed fact appropriate for process arbitrator jurisdiction, as set forth in §II.4, *infra*.

MLBAM's tacit admission that nearly every Petitioner had an agreement to arbitrate with it prior to its purported amendment of its terms also obviates its quibble with the specific language of Petitioners' declarations, which it claims are insufficiently precise.  Respondent MLB Advanced Media, L.P.'s Opposition To Petitioners' Motion To Compel Arbitration And Cross-Motion To Sever Petitioners' Claims, ECF No. 28, ("MLBAM Br.") at 16.  However, MLBAM does not dispute that over 99% of the declarations were signed before the February 6, 2024 amendment to MLBAM's Terms of Service.  Given that the information included was apparently more than sufficient for MLBAM to *confirm* the subscriber status of nearly every single Petitioner, and include that confirmation in a sworn declaration, MLBAM's argument falls flat.

## II.    MLBAM'S Reliance On Its Purported Updated Terms Is Unavailing

### 3.    MLBAM's Attempted Amendment Is Ineffective

Much of MLBAM's opposition to this motion relies on an improper amendment it made to its Terms of Use in direct response to individuals like Claimants bringing the same kinds of claims at issue here against it in arbitration.  Such amendments, which change the rules governing a conflict to be more favorable to the drafter mid-dispute, are unconscionable, breach the covenant of good faith and fair dealing, and cannot be enforced.

As a preliminary matter, because the Operative Terms are enforceable, issues regarding the purported amendment, including whether any Claimant could have taken actions to agree to it, are delegated.   Indeed, the Amended Terms require arbitration of any "dispute or claim that

arose before the existence of this or any prior Agreement (including, but not limited to, claims relating to advertising)." *See* Section 11(1).  An arbitrator will need to determine whether the "VPPA carveout" in the Amended Terms is enforceable in light of this conflicting language. Further, along with claims under the VPPA, the Demands also seek claims under the consumer protection laws of various states and for unjust enrichment.  The Operative Terms delegate to an arbitrator to decide whether (1) MLBAM's contract amendment was enforceable despite the lack of any opt-out mechanism, (2) if so, whether Claimants received notice and assented to any contract amendment, (3) then, whether claims that have accrued before the amendment of the terms fall within any carveout , and (4) whether the claims that are not within the scope of the carveout can proceed in arbitration, and (5) whether the Amended Terms as a whole are unenforceable or unconscionable due to their inclusion of additional notice, cost-shifting, and "batching" provisions.

But even if this Court were to consider the purported amendment, it is unenforceable under these circumstances.  A party that reserves the right to unilaterally amend an agreement is bound to use that right in a manner consistent with the implied covenant of good faith and fair dealing.  "Under New York law, 'implicit in all contracts is a covenant of good faith and fair dealing in the course of the contract performance.'" *DBT Gmbh v. J.L. Min. Co.*, 544 F. Supp. 2d 364, 384 (S.D.N.Y. 2008) (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). "In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,* 487 F.3d 89, 98 (2d Cir. 2007).  This duty of good faith extends to the unilateral amendment power contained in the Operative Terms, and courts have

repeatedly found self-serving amendments that apply retroactively to existing disputes violate the implied covenant. *See, e.g., Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal App. 4th 1425, 1433 (Cal. Ct. App. 2012) (under both the FAA and state law, an "arbitration agreement is unenforceable" if a party could "amend the contract in anticipation of a specific claim, altering the arbitration process to [the other party's detriment"); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 963 (Cal. Ct. App. 2015) ("When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights.").

MLBAM's amendment here was just this sort of unenforceable, bad-faith attempt to change the rules of the game mid-play. As MLBAM itself admits, prior to amending its Terms of Use, it was faced with demands for individual arbitration alleging VPPA and other consumer privacy claims from thousands of customers represented by multiple law firms, which had already accrued. *See* Declaration of Alan E. Littmann In Support Of Respondent MLB Advanced Media, L.P.'s Opposition To Petitioners' Motion To Compel Arbitration And Cross-Motion To Sever Petitioners' Claims, ECF No. 28-9 ("Littman Decl."), ¶ 3; *see also* Waisnor Supp. Decl., ¶¶13-15. The self-serving nature of MLBAM's amendment is clear. It did not make routine changes to its terms for clarity or neutral business reasons. Instead, it attempted to expressly carve out accrued claims like the ones already made against it – claims effectively identical to Petitioners' claims here, and to claims it had previously repeatedly compelled to arbitration – for the purposes of delaying or derailing its customers' ability to hold it accountable for privacy violations.

For this reason, the fact that MLBAM's attempt to amend (briefly) predated Petitioners' formal notice letter is irrelevant. Petitioners' claims accrued prior to the amendment. And prior to amendment, MLBAM was undeniably aware of the underlying facts giving rise to Petitioners' claims (i.e., its routine violations of the VPPA and other privacy laws with respect to all of its customers) and was likewise aware that thousands of unhappy customers were seeking redress for this wrongdoing in arbitration – the forum it had previously imposed upon them. Littman Dec., ¶3; Waisnor Supp. Decl., ¶¶13-15. This also distinguishes the instant matter from cases relied on by Respondent such as *Wu v. Uber Techs., Inc.*, No. 90, 2024 WL 4874383 (N.Y. Nov. 25, 2024). There, Uber pushed out an amendment to its terms that "appear[ed] . . . intended to address what courts had previously found to be ineffective notice of mandatory arbitration," but did not single out any particular kind of dispute. *Id.* at *42 n.10 (Rivera, J., dissenting). New York's Court of Appeals concluded that these amended terms could apply retroactively to an unrelated, already-filed personal injury suit after the plaintiff agreed to them. *Id.* at *29. However, the court did not address, much less rule on, the situation at issue in *this* case, where MLBAM abused its unilateral amendment power for the specific purpose of changing the forum for an entire category of accrued claims it had previously compelled to arbitration. As set forth above, and as courts have repeatedly found, such targeted unilateral amendments violate the implied covenant and such amendments are unenforceable. *See, e.g., Heckman v. Live Nation Ent., Inc*., 120 F.4th 670, 682-83 (9th Cir. 2024) (noting extreme unconscionability of amended terms made effective immediately and applying retroactively to extant disputes); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 570 (S.D.N.Y. 2004) (updates to arbitration clauses to be more favorable to respondent "may not be enforced" when they are unilaterally made after a dispute "was commenced").

Finally, MLBAM admits that "[a]pproximately 145 Petitioners have an OktaID" – which MLBAM holds out as the gold standard evidencing agreement to its Terms of Use – but that it has *no evidence whatsoever* that these Petitioners ever logged into its services or otherwise allegedly assented to its updated terms after February 6, 2024.  Frost Decl., ¶ 40(d).  Although it engages in bare speculation that these Petitioners might somehow have "used an MLB Digital Property . . . without logging in," *id.*, it provides no evidence that any of these individuals did so, or could have done so.  Such rank speculation is insufficient to defeat a motion to compel arbitration, and there is no genuine dispute that these Petitioners are entitled to arbitrate their claims under the Operative Terms.  Thus, at an absolute minimum, this Court should compel MLBAM to arbitrate its disputes with these 145 individuals immediately.

> ### 4.    MLBAM's Contention That The Updated Terms Apply To These Disputes, Along With Its Other Issues, Can Be Addressed To The Process Arbitrator

As set forth above and in Petitioners' opening briefing, the Operative Terms delegate all issues, including those raised by MLBAM in its opposition, to AAA arbitrators.  The arbitration clause includes and incorporates the rules in place at the time the claim was filed.   As mass arbitrations like those Petitioners seek here have become more commonplace, AAA has instituted new Mass Arbitration Supplementary Rules designed to cheaply, efficiently, and effectively adjudicate the precise types of issues MLBAM raises in its opposition here.

The parties here agreed to have their disputes determined under the AAA consumer rules, and agreed that AAA would apply the Mass Arbitration Supplementary Rules in connection with any claim that met the definition of a mass arbitration.  *See, e.g., Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (parties may incorporate AAA rules into arbitration agreement by reference, including those rules' grants of authority to arbitrator to decide certain issues).  AAA's Mass Arbitration Supplementary Rules govern where, as here, more than 25

substantially similar claims are brought by the same or coordinated counsel against a single defendant. Petition, Exh. G. at Rule MA-1. They provide that certain issues may be decided across all individual arbitrations included in the mass arbitration by a single process arbitrator. *Id.*, Rule MA-6. As relevant here, the issues available for Process Arbitrator determination include "whether the parties have met the AAA-ICDR's filing requirements or the filing requirements in the parties' contract and, if applicable, how the parties can correct any deficiencies in the filing requirements and how to proceed if they do not," "which demands for arbitration should be included as part of the mass arbitration filing," and "any other non-merits issues affecting case administration arising out of the nature of the mass arbitration that the Process Arbitrator determines is appropriate for determination," including "whether the dispute(s) before the Process Arbitrator are fact-specific and, therefore, must be made on an individual basis." *Id.*, Rules MA-6(c), MA-6(d)(i). Such determinations are to be made "within thirty (30) days" after briefing and hearing are complete, and do not require the payment of individual per-case fees until after the Process Arbitrator determines that cases should proceed to merits arbitration. *Id.*, Rule MA-6(g).

Petitioners' counsel is currently involved in seven separate "Mass Arbitration" proceedings before AAA Process Arbitrators, and has repeatedly adjudicated issues including the applicability of amended terms, the existence of purported dual representations, and the adequacy of evidence of accountholder status – that is, all of the major issues identified in MLBAM's briefing – in Process Arbitration proceedings. Waisnor Supp. Decl., ¶21.

Thus, MLBAM will not lose any opportunity to a full, fair and efficient hearing on its arguments should this Court compel arbitration. To the contrary, MLBAM will be entitled to make these arguments prior to individual merits arbitrators being assigned to adjudicate

Petitioners' individual claims, as part of a robust process set forth in the rules it was content to arbitrate under until very recently.  MLBAM's alternative proposal – thousands of individual trials – would serve no purpose other than delay and burden on this Court, Petitioners, the parties' attorneys, and MLBAM itself.

### III.    MLBAM's Remaining Arguments, Even If Not Delegated To Arbitrators, Are Meritless

#### 1.    MLBAM's Arguments Regarding Purportedly Dually Represented Clients, An Issue It Raised For The First Time In Its Opposition, Is Irrelevant

Despite being aware of Petitioners' claims for more than a year, MLBAM raises for the first time the issue of purported dual representations of certain Claimants for the first time in its opposition to this motion.   It claims, based on two unsupported sentences in an attorney declaration, that "655 Petitioners . . . already received their requested relief—arbitrating VPPA claims against MLBAM," and asks this Court to dismiss those individuals' petition as moot. MLBAM Br. at 15 (citing Littmann Decl. ¶ 3.)  As set forth above, this issue is delegated to AAA arbitrators in any event, but even if it were not, MLBAM's argument would be meritless.

As a threshold matter, MLBAM's "evidence" that these individuals have obtained the same relief they seek here is just a list of names appended to a declaration.  Neither MLBAM's briefing nor the Littmann Declaration provide any specificity as to when these purportedly dually represented individuals brought their claims or whether there is a complete overlap between these purportedly already arbitrated claims and the claims asserted here.  MLBAM does not provide the status of any particular supposedly pending or complete claim, such as a AAA case number, a copy of any arbitration demand or award, or other evidence that what it says about these purported proceedings is accurate.

These omissions are especially concerning given that AAA's own publicly available statistics seem to indicate that (aside from Petitioners' own filings that led to this Petition) there haven't even been close to 655 MLBAM customers who sought arbitration with AAA, and certainly not 655 Petitioners.  Other than the AAA arbitrations filed by Petitioners', AAA's most recent quarterly report lists 27 total cases filed against MLBAM by other firms or *pro se* consumers, including 24 filed by the same law firm that represented the putative class in *Hayes* that MLBAM compelled to arbitration.[3]  Waisnor Supp. Decl., ¶13, Exh. D.  Moreover, although certain other law firms may have, at some point, represented individuals in arbitrations against MLBAM, it is not clear whether any of them filed the claims, as they ceased pursuing arbitrations on behalf of large numbers of individuals, in favor of filing class actions.  *Id.*, ¶¶15-16; *see Henry v. Major League Baseball Advanced Media, L.P.*, 24-cv-01446; *Golland et al. v. Major League Baseball Advanced Media, L.P.*, 2024-cv-06270.  It is thus far from clear whether there are actually any pending or completed claims before AAA on behalf of any Petitioner.  Waisnor Supp. Dec., ¶16.

Regardless of this lack of proof, when such dual representation issues occur in mass arbitrations they are typically be dealt with consensually as part of a routine, administrative process, just like in analogous litigation postures such as MDLs.  *See generally* Waisnor Supp. Dec., Exhs. A-C (directing resolution of dual representation issues through cooperation of the parties and record reconciliation processes).  Had MLBAM previously raised this purported issue at any time prior – when it was first on notice of Petitioners' claims in February of 2024, or when

---

[3] This Court may take judicial notice of any "fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b)(2); *see also, e.g., Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 U.S. Dist. LEXIS 91102, at *30 n.6 (E.D.N.Y. July 3, 2014) (taking judicial notice of AAA rules and collecting cases).

Petitioners initially filed their claims with AAA later that year, for example – Petitioners'
counsel would have suggested this sort of reconciliation process, and this issue would likely
already be resolved.  Indeed, it is Petitioners' counsel's experience that AAA process arbitrators
are willing and able to facilitate resolution of such issues in a manner that addresses the concerns
of all parties, prior to a defendant company having to pay any individualized filing fees.  *See*
Waisnor Supp. Dec., ¶¶17-18.

MLBAM has not sufficiently demonstrated that any actual dual representation is present,
or that any prior arbitration has occurred for any Petitioner.  However, it will have the
opportunity to do so, and the parties can easily resolve any such issue before a merits arbitrator.

### 2. Petitioners Residing In California Are Entitled To The Protections Of The California Arbitration Act

MLBAM asserts that the Operative Terms' choice of law clause invoking New York law
forecloses the application of California's protections for arbitral claimants to its conduct
targeting those Petitioners who reside in California.  MLBAM Br., 25-28.  This is incorrect.

It is black-letter law that the California Petitioners receive the protection of their home-
state laws, including Cal. Code Civ. Proc. §1281.97, regardless of any contractual provision
invoking the application of the FAA or other state law.  *See Nyerges v. Pac. Sunwear of Cal.,
LLC*, No. 21-CV-01123-CJC-DFM-X, 2022 WL 20717551, at *3 (C.D. Cal. July 6, 2022)
(holding that the CAA applies "in any arbitration involving California employees or consumers"
and finding that "the California legislature meant to offer a mechanism for ensuring the
efficiency of any arbitration, not just those being compelled pursuant to the CAA"); *Doe v. Laws.
For Emp. & Consumer Rts.*, No. 2D CIV B330052, 2024 WL 1203776, at *2 (Cal. Ct. App. Mar.
21, 2024) (rejecting the argument that CAA is not applicable "because the arbitration agreement
provides the arbitration is conducted under [FAA] rules" and holding that "even when the [FAA]

applies, interpretation of the arbitration agreement is governed by state law principles" and CAA is "part of the substantive law of contracts in California"); *see also Postmates Inc. v. 10,356 Individuals*, No. 20-cv-02783, 2021 WL 540155, at *1 (C.D. Cal. Jan. 19, 2021); *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 746 (Cal. Ct. App. 2022).

Thus, § 1281.97 applies here because it governs when a drafting party, like MLBAM, has breached its payment obligations in a contract to arbitrate. *Dekker v. Vivint Solar, Inc.*, 479 F. Supp. 3d 834, 837 (N.D. Cal. 2020) ("Here, § 1281.97 *is* outcome determinative (on the breach issue) . . . ."), *rev'd on other grounds*, No. 20-16584, 2021 WL 4958856 (9th Cir. Oct. 26, 2021). Indeed, the California legislature enacted the CAA's provisions in response to companies like MLBAM "refusing to pay fees and costs required to initiate arbitration, effectively placing [consumers] in a procedural limbo." S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019). MLBAM cannot shirk its statutory obligations to California Petitioners, arising at the point of contract formation, through a choice of law clause that, if given the effect MLBAM urges, would strip those Petitioners of the ability to effectively vindicate their statutory rights. *Cf. Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (noting invalidity of contractual provisions that constitute "prospective waiver of a party's *right to pursue* statutory remedies") (citations omitted).

Finally, MLBAM's argument that § 1281.97 was never triggered because MLBAM did not receive the invoice is false. AAA transmitted the invoice to MLBAM's counsel on October 2, 2024 via email along with sending it through AAA's WebFile system. Waisnor Supp. Decl. ¶22 and Exh. E.

14

IV.    **MLBAM'S Procedurally Improper "Cross-Motion" To Sever This Action Into Thousands Of Individual Actions Should Be Denied**

MLBAM spends a few paragraphs of its opposition on a sketchily-developed "cross-motion" to sever this action into more than 5,000 individual cases, which it paradoxically contends would enhance efficiency, when the obvious consequence of granting such relief would be to overload the Court and its staff with a deluge of nearly identical individual claims that can and should be decided together. Beyond the obvious logistical hurdles, the relief MLBAM requests is unsupported by relevant law.

As MLBAM itself notes, claims are properly consolidated where they "'arise out of the same transaction or occurrence or series of transactions or occurrences, and . . . some questions of law or fact common to all parties will arise in the litigation.'" MLBAM Br. at 11 (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986). It is obvious that both prongs of this test are met. The key "transaction or occurrence" at issue in Petitioners' cases is the same for all of them: MLBAM's blanket refusal to arbitrate under an agreement that is identical for each of them. Petition ¶11. The same is true for the key legal questions in dispute – i.e., whether MLBAM's purported amendment to its terms can apply retroactively under the unique circumstances of this case.

Further, it should be noted that the "prejudice" MLBAM contends that it would suffer if these actions are not severed – i.e., the logistical difficulties of numerous individualized hearings – would be *aggravated*, not mitigated, by severing this case into thousands of individual actions. It is difficult to imagine how MLBAM would be *less* aggrieved by being required to file over five thousand oppositions (or, for that matter, paying for its attorneys to file *pro hac vice* applications in five thousand individual actions). Nor would judicial economy be served by flooding the federal courts with those petitions, which might trigger the application of the federal

MDL process, with its attendant complexities.  Avoiding such absurdity is the purpose of consolidated proceedings, and is a practical necessity in this instance, especially when the parties already agreed to the consolidation of these arbitrations for certain purposes before AAA.

Finally, MLBAM has suffered no actual prejudice here, and apparently did not feel it was unable to substantively respond to Petitioners' motion notwithstanding that Petitioners have filed their petition and motion jointly.  Respondent's motion should be denied.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their prior briefing, Petitioners respectfully request that their motion should be granted in its entirety, and Respondents' cross-motion be denied in its entirety.

Dated: May 30, 2025 Respectfully submitted,

By:  *s/ Jonathan D. Waisnor*
 Jonathan D. Waisnor
 Jonathan Gardner
 James Fee
 Alexander F. Schlow
 Stephen Kenny
 **LABATON KELLER SUCHAROW LLP**
 140 Broadway, 34th Fl.
 New York, NY 10005
 Telephone: (212) 907-0700
 Facsimile: (212) 818-0477
 jwaisnor@labaton.com
 jgardner@labaton.com
 jfee@labaton.com
 aschlow@labaton.com
 skenny@labaton.com

 *Attorneys for Petitioners*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing document complies with this Court's word count requirements and contains 4,872 words. Pursuant to Local Rule 7.1(c), this is exclusive of the caption, table of contents, table of authorities, signature block, and required certificates.

*s/ Jonathan D. Waisnor*
Jonathan D. Waisnor