UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IAN MOORE, AND 5,628 OTHER INDIVIDUALS,<br><br>Petitioners,<br><br>v.<br><br>MLB ADVANCE MEDIA, L.P.,<br><br>Respondent. | No. 25-cv-03121 (AT)<br><br>SUPPLEMENTAL DECLARATION OF JONATHAN D. WAISNOR IN FURTHER SUPPORT OF PETITIONERS' MOTION TO COMPEL ARBITRATION AND IN RESPONSE TO RESPONDENT'S CROSS-MOTION TO SEVER PETITIONERS' CLAIMS |

I, Jonathan D. Waisnor, declare as follows:

1.      I am an attorney at the firm of Labaton Keller Sucharow LLP and counsel to 5,629 Petitioners who commenced arbitration and are seeking to compel MLBAM to arbitrate in this proceeding.  I submit this supplemental declaration in response to Respondent MLB Advance Media, L.P.'s ("MLBAM") *Response in Opposition to Motion to Compel and Cross-Motion to Sever Petitioners' Claims* (ECF No. 28).

2.      My firm has been counsel to arbitration claimants in seven (7) separate "Mass Arbitration" proceedings administered under the AAA Mass Arbitration Rules and Procedures ("Mass Arbitration Rules") since they were introduced in 2023.  Exhibit G to Petition.

3.      The Mass Arbitration Rules have gone through several iterations.  The current version of the Rules, effective April 2024, was also in place at the time of the filing of the MLB Arbitrations.  These Mass Arbitration Rules provide that the Process Arbitrator's jurisdiction includes "(i) whether the parties have met the AAA-ICDR's filing requirements or the filing requirements in the parties' contract and, if applicable, how the parties can correct any deficiencies in the filing requirements and how to proceed if they do not; (iv) which demands for arbitration

should be included as part of the mass arbitration filing; (xi) any other non-merits issues affecting case administration arising out of the nature of the mass arbitration . . . ."  Petition, Exhibit G, Rule MA-6(c).

4.     A Process Arbitrator shall also issue a final decision within "30 calendar days from" the later of receipt of the final document submissions, the close of the hearing, or receipt of post-hearing document submissions.

**Purportedly Dual Represented Claimants**

5.     Occasionally, individuals in mass cases retain the services of multiple law firms to represent them in the same or similar claim. The Courts overseeing multi-district litigation ("MDL") proceedings routinely enter orders requiring law firms to resolve dual representation issues through the cooperative efforts of the firms representing those individuals.  *See* Exhibit A (*In re: 3M Combat Arms Earplug Prods. Liab. Litig.* Case No. 3:19-md-02885, Order, ECF No. 3973 (N.D. Fl. Dec. 26, 2023) (instituting process to resolve dually represented plaintiffs through cooperation of the parties); Exhibit B (*In re Suboxone (Buprenorphine/Naloxone) Film Prods. Liab. Litig.,* Case No. 1:24 md-03092,Case Management Order, ECF No. 158) (N.D. Ohio Nov. 4, 2024) (requiring resolution of dual representation issues through online platform and party cooperation); Exhibit C (*In re: Oil Spil by the Oil Rig "Deepwater Horizon' in the Gulf of Mexico, on April 20, 2010*", Case No. 2:10-md-02179, Order on Motion to Approve Dual representation Resolution Procs., ECF No. 16164 (E.D. La. Apr. 8, 2016) (instituting dual representation resolution procedures through mutual exchange of records).

6.     In mass arbitration matters, my firm has typically resolved dual representation issues cooperatively with other law firms representing those individuals as well as the respondent company.

7.      MLB claims that "655 Petitioners' claims are already in arbitration, so their requests are moot" and that ""655 Petitioners . . . already received their requested relief—arbitrating VPPA claims against MLBAM."   MLBAM Br. at 15.  Prior to the Response, MLB did not provide my firm with names of any Petitioners who it claimed had already commenced arbitration or were represented by other law firms with respect to their VPPA claims against MLBAM.  However, data AAA is required to publish does not reflect that there have been 655 claims filed by consumers in total against MLBAM.

8.      Since 2020, MLB's arbitration clause has provided for administration of consumer arbitrations by the AAA.

9.      Each quarter, AAA is required by law to publish a report of all consumer cases "closed within the last five years" including data on the responding party, the law firm, if any, representing the consumer, the ultimate disposition of the case (e.g., withdrawn, settled, awarded, or closed), and whether the matter was part of a mass arbitration filing.  AAA Consumer and Employment Arbitration Statistics, https://www.adr.org/ConsumerArbitrationStatistics

10.     AAA also provides information on what certain columns in the data mean which can be located here:  https://www.adr.org/ConsumerArbitrationStatistics

11.     The native copy of the most recent AAA report, reflecting cases as of the fourth quarter of 2024, is available to the public as an "excel" file for download on AAA's website.  AAA, Consumer Report Q4, https://www.adr.org/sites/default/files/document_repository/ConsumerReport_Q4_2024.xlsx Attached to this declaration as Exhibit D is a copy of this report reflecting cases filed by consumers in which the respondent party is MLBAM.

12.    Column AG of the report, "Mass Arbitration Filings That Did Not Proceed" reflects that my firm filed 5,746 cases against MLBAM on behalf of our consumer clients, all of which were closed.

13.    Aside from the cases filed by clients of my firm, this report shows just 24 cases against "Major League Baseball Advanced Media, L.P." filed by consumers represented by the law firm of Pieffer Wolf Carr & Kane, APLC.  In addition, there were two cases filed against "MLB Advanced Media, LP" by consumers represented by Swigart Law Group, APC.  There was also one mediation matter filed by a pro se consumer.

14.    The report does not disclose whether these were claims under the VPPA, another data privacy statute, or another type of claim.

15.    Besides those identified in Exhibit D, I am aware of at least four other law firms that, at one time or another, represented consumers in connection with VPPA claims against MLBAM.  Of those firms, three are now counsel to putative lead plaintiffs in class actions regarding VPPA claims against MLBAM.  *See Henry v. Major League Baseball Advanced Media, L.P.*, No. 24-cv-01446 (S.D.N.Y. Feb. 26, 2024); *Golland et al v. Major League Baseball Advanced Media, L.P.*, No. 24-cv-06270 (S.D.N.Y. Aug. 23, 2024).  It is not clear from the Response whether those firms filed any arbitrations on behalf of any of their individual arbitration clients, have since withdrawn any filed arbitrations, or have ceased representing their individual arbitration clients and elected to represent a putative class of consumers with respect to similar claims.

16.    Thus, AAA's own data does not reflect that there were even 655 consumers who "received their requested relief" before AAA, never mind 655 Petitioners.

17.     In mass arbitration matters that are filed with AAA, AAA's Mass Arbitration Rules permit a process for resolving dual representations during the Process Arbitration, similar to how MDL transferee judges oversee those matters in court.  In one mass arbitration matter, the Process Arbitrator ordered the respondent company to disclose any dual representation claimants and then ordered my firm to communicate with those claimants and other counsel representing them to determine whether the individual would be proceeding in a particular mass arbitration.  In another mass arbitration matter, the Process Arbitrator directed the AAA to facilitate resolution of the dual representation issues in cooperation with the respondent company and other law firms purporting to represent some of the claimants.

18.     I have felt that the procedures for resolving the dual representation issues were fair, effective, and consistent with the nature of arbitration, which prioritizes party agreement and streamlined procedures over "gotcha" litigation tactics.

**Other Objections Raised by MLBAM**

19.     I understand that MLBAM has also claimed that "(2) 363 Petitioners have no MLB.com account and thus no evidence of any agreement; (3) 5,120 Petitioners indisputably assented to the new TOU that bars arbitrating Video Privacy Protection Act ("VPPA") claims; and (4) MLBAM's records show a genuine dispute of fact as to whether 145 Petitioners have a current agreement to arbitrate with MLBAM—an issue that will require discovery and individual trials to resolve."  MLBAM Br. At 2.

20.     At my direction, members of the staff of my law firm reviewed the declarations submitted as Exhibit E to the Petition in this matter, to confirm the dates on which each Petitioner signed his or her declaration contained therein.  This review revealed that all but four of the declarations included in Exhibit E  - those of Albert Freedman, Tyler Lavoie, Trung Nguyen, and Crystal Arterberry, the final four declarations in Exhibit E13 to the petition - were signed prior to

February 6, 2024, the earliest possible effective date for MLBAM's Amended Terms of Use. The remaining 99.96% of the declarations were executed before MLBAM's attempted amendment.

21.     I have also been engaged in proceedings where Process Arbitrators resolve disputes regarding (1) whether a particular Claimant has an account with the company or have produced sufficient evidence that they have an account with the company so that those Claimants may proceed to merits arbitration, or (2) whether and what version of an applicable terms of service or arbitration agreement applies to that particular Claimant's claim.

22.     I further understand that MLBAM contends that it never received an invoice from AAA for the initiation fees it failed to pay, purportedly excusing its nonpayment. MLBAM Br. at 7. This is difficult to credit, given that my firm did receive the invoice in question, via an email from AAA administrative staff that also included Alan Littmann, the same attorney representing MLBAM in this action, as a recipient, using his correct email address (the same one in his signature block on MLBAM's briefing). A copy of that email and the invoice is attached hereto as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 30, 2025, in Brooklyn, New York.

*s/ Jonathan D. Waisnor*
Jonathan D. Waisnor